## POSTAL TELEGRAPH CABLE COMPANY v. ALABAMA.

### ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

No. 702. Submitted November 19, 1894. — Decided December 17, 1894.

Under the Judiciary Acts of the United States, a suit taken between a State and a citizen or corporation of another State is not a suit between citizens of different States; and the Circuit Court of the United States has no jurisdiction of it, unless it arises under the Constitution, laws, or treaties of the United States.

Under the acts of March 3, 1887, c. 373, and August 13, 1888, c. 866, a case (not depending on the citizenship of the parties, nor otherwise specially provided for) cannot be removed from a state court into the Circuit Court of the United States, as one arising under the Constitution, laws, or treaties of the United States, unless that appears by the plaintiff's statement of his own claim; and, if it does not so appear, the want cannot be supplied by any statement in the petition for removal or in the subsequent pleadings.

THIS was an action brought November 4, 1892, in the circuit court of Montgomery County in the State of Alabama, by the State of Alabama against the Postal Telegraph Cable Company, a corporation organized under the laws of the State

of New York, to recover taxes and penalties claimed by the State of Alabama under its statute of February 28, 1889, c. 103.

By that statute, it is enacted that "all express and telegraph and sleeping-car companies, doing business between points wholly within this State, and without reference to their interstate business, shall pay in advance on the first day of January, in each year, to the auditor of the State of Alabama, a privilege tax of five hundred dollars, together with one dollar for each mile of telegraph line, or of railroad tracks, on or along which the lines of said companies operate or extend; and no express or telegraph company, which has paid the privilege tax hereby required, shall be liable to pay any other privilege or other tax in this State, except licenses required by cities and towns, and except upon their real estate, fixtures and other property, which shall be taxed at the same rate as is now levied and collected upon other property in this State: Provided, that all express or telegraph companies, which have heretofore paid their taxes to the State under existing laws, for the year 1889, are hereby exempt from the provisions of this clause for said year: And provided further, that all telegraph companies, whose lines on which business is done wholly within the State do not exceed 150 miles, shall pay, at the same time and in the same manner and for the same purpose, a privilege tax at the rate of one dollar a mile for each mile of railroad along or upon which they operate or do business, and no more: And provided further, that said company, or some agent thereof, shall, when making payment of the tax hereinbefore mentioned, report under oath the mileage of railroad operated by them respectively; and, in default of the payment of said tax, or the making of said report, for sixty days after maturity of said tax, a penalty of double the amount of the same shall be imposed on such defaulting companies." Acts of Alabama of 1888–89, p. 89.

The complaint consisted of three counts, the first of which was as follows:

"The plaintiff, the State of Alabama, claims of the defendant, the Postal Telegraph Company, a foreign corporation,

the sum of fifteen hundred dollars; for that whereas heretofore, to wit, on the first day of January, 1890, and for more than sixty days thereafter, the defendant did engage in the business of a telegraph company between points wholly within the State of Alabama, and did run and operate its lines on or along two hundred and fifty miles of railroad track within the State of Alabama, whereby it became and was the duty of the defendant to pay in advance on the first day of January, 1890, to the auditor of the State of Alabama, a privilege tax of five hundred dollars, together with the further sum of one dollar for each mile of railroad track on or along which the lines of the defendant as such telegraph company did operate or extend, and at the same time to report under oath the mileage of railroad track operated by it within the State of Alabama; and the plaintiff avers that the defendant made default in the payment of said tax, and in the making of said report, for more than sixty days, whereby it became and was and is liable to pay to the plaintiff a penalty in double the amount of said tax, that is to say, a penalty of fifteen hundred dollars, for which plaintiff here sues."

The second and third counts were precisely like the first, except that the second substituted January 1, 1891, for January 1, 1890; and that the third substituted January 1, 1892, and alleged that the defendant operated its lines on or along three hundred and twenty-eight miles of railroad track, and became liable to pay to the plaintiff a penalty of $1656.

In December, 1892, the case was removed into the Circuit Court of the United States for the Middle District of Alabama, under the act of Congress of March 3, 1887, c. 373, (24 Stat. 552,) as corrected by the act of August 13, 1888, c. 866, (25 Stat. 433,) upon the petition of the defendant, alleging that it was a corporation organized under the laws of the State of New York in 1886 for the purpose of constructing, owning, using, and operating electric telegraph lines within that State, and extending beyond its limits into and across other States and Territories, for the purpose of commercial and interstate communication by telegraph lines for general public use; that it had its principal executive, financial, and

accounting offices in the city of New York; that it was "engaged in the general telegraph business of receiving and sending telegrams over its lines for commercial purposes for the public, between citizens within the State of New York and other States, and across the same to and from other places within other States, and also in sending messages by telegraph communication between the several departments of the government of the United States and their officers and agents at a rate of charges designated and prescribed by the Postmaster General of the United States under the laws of Congress;" that on March 6, 1886, it accepted the provisions of the act of Congress of July 24, 1866, c. 230, (now title 65 of the Revised Statutes,) and in pursuance thereof the Postmaster General of the United States had annually from time to time designated it as one of the telegraph companies to transmit government messages for the United States; that most of its lines were upon the post roads of the United States; that now and during all these times it was a citizen and resident of the State of New York; and "that the said action is a suit of the civil nature at common law, in which the matter in dispute and the interests involved exceed, exclusive of the interests and costs, the sum or value of two thousand dollars; and that the controversy therein arises under the Constitution and laws of the United States and laws of the State of Alabama, and is wholly between citizens of different States, to wit, between your said petitioner, who avers that it was at the time of the bringing of this suit and still is a citizen and resident of the said State of New York, and the said plaintiff, the said State of Alabama, who, your petitioner avers, was then and still is a citizen and resident of the State of Alabama."

In May, 1893, the defendant filed in the Circuit Court of the United States an answer, setting up substantially the same facts as in its petition for removal.

In January, 1894, the plaintiff filed an amended complaint, claiming for each of the years 1890, 1891, and 1892, a privilege tax of $500, and a penalty of $1816; and the defendant filed an answer, similar to its original answer, and admitting the

number of miles of telegraph line owned by it within the State.

In February, 1894, the parties submitted the case to the judgment of the court upon an agreed statement of facts, in which the facts set up in the answer were admitted. The court thereupon gave judgment for the plaintiff for the sum of $3846.20; and the defendant sued out this writ of error.

*Mr. T. Moultrie Mordecai* and *Mr. P. H. Gadsden* for plaintiff in error.

*Mr. William L. Martin,* Attorney General of the State of Alabama, for defendant in error.

MR. JUSTICE GRAY, after stating the case, delivered the opinion of the court.

By section 1 of the act of Congress of March 3, 1875, c. 137, as amended by the acts of March 3, 1887, c. 373, and August 13, 1888, c. 866, it is enacted that the Circuit Courts of the United States shall have original cognizance, concurrent with the courts of the several States, of all suits of a civil nature, at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of $2000, "and arising under the Constitution or laws of the United States, or treaties made, or which shall be made, under their authority; or in which controversy the United States are plaintiffs or petitioners; or in which there shall be a controversy between citizens of different States;" "or a controversy between citizens of the same State claiming lands under grants of different States; or a controversy between citizens of a State and foreign States, citizens or subjects." And by section 2, the defendant's right to remove a suit — whether arising under the Constitution, laws or treaties of the United States, or. coming within any other class above enumerated — from a state court into the Circuit Court of the United States, is restricted to suits "of which the Circuit Courts of the United States are given original jurisdiction by the preceding section." 25 Stat. 434.

The grounds upon which the present suit was removed from. a court of the State of Alabama into the Circuit Court of the United States were that the controversy therein arose under the Constitution and laws of the United States, and that it was wholly between citizens of different States.

But the suit was one brought by the State to recover taxes and penalties imposed by its own revenue laws, the jurisdiction over which belongs to its own tribunals, except so far as Congress, in order to secure the supremacy of the national Constitution and laws, has provided for a removal into the courts of the United States. *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 290; *Huntington* v. *Attrill*, 146 U. S. 657, 672. And the. complaint by which the suit was begun did not mention the Constitution or any law of the United States, or claim any right under either.

A State is not a citizen. And, under the Judiciary Acts of the United States, it is well settled that a suit between a State and a citizen or a corporation of another State is not between citizens of different States; and that the Circuit Court of the United States has no jurisdiction of it, unless it arises under the Constitution, laws or treaties of the United States. *Ames* v. *Kansas*, 111 U. S. 449; *Stone* v. *South Carolina*, 117 U. S. 430; *Germania Ins. Co.* v. *Wisconsin*, 119 U. S. 473.

It is equally well settled that under the provisions, above referred to, of the existing act of Congress, no suit can be removed by a defendant from a state court into the Circuit Court of the United States, as one arising under the Constitution, laws or treaties of the United States, unless the fact that it so arises appears by the plaintiff's statement of his own claim; and that a deficiency in his statement, in this respect, cannot be supplied by allegations in the petition for removal, or in subsequent pleadings in the case. *Tennessee* v. *Bank of Commerce*, 152 U. S. 454; *Chappell* v. *Waterworth, ante,* 102.

The conclusion is inevitable, that the judgment of the Circuit Court of the United States must be reversed, and the case remanded to that court, with directions to remand it to the state court; and that, the case having been wrongfully

removed into the Circuit Court of the United States by the Postal Telegraph Cable Company, that company must pay the costs in that court, as well as in this court. *Tennessee v. Bank of Commerce*, above cited; *Hanrick v. Hanrick*, 153 U. S. 192.

*Judgment reversed accordingly.*