**NATIONAL MARKET REPORTS, INC., Plaintiff,**

v.

**Donald W. BROWN, the Insurance Commissioner of West Virginia, Defendant.**

**No. CA 76–0411, CH.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Jan. 18, 1978.

Herbert W. Bryan, Charleston, W. Va., Robert A. Saltzstein, William L. Fallon, Stephen M. Feldman, Wyatt & Saltzstein, Washington, D. C., for plaintiff.

William D. Highland, Asst. Atty. Gen., Chauncey H. Browning, Jr., Atty. Gen., Charleston, W. Va., for defendant.

Before FIELD, Senior Circuit Judge, HALL, Circuit Judge, and KNAPP, Chief District Judge.

FIELD, Senior Circuit Judge:

National Market Reports, Inc. (NMR), which publishes and distributes nationally a "Red Book" of used car values, brought this action to enjoin the operation, enforcement or execution of Section 33, Article 6, Chapter 33 of the Code of West Virginia (as amended, 1976), which provides:

> *Value of motor vehicles involved in claim.* Insurance companies doing business in this State shall use the most recent publication of the "official used car guide" published by the national automobile dealers association as a guide for setting the minimum value of any motor vehicle involved in a claim settlement arising from a motor vehicle accident.[1]

Plaintiff alleges, and has submitted affidavits to show, that prior to the statute's enactment and effective date of May 27, 1976, a number of West Virginia insurers purchased the NMR "Red Book" as a guide for determining the value of motor vehicle accident settlements in the state.[2] But because this recent statute mandates the use by state insurers of the rival National Automobile Dealers Association publication as a settlement guide, it is claimed that the use of plaintiff's "Red Book" has diminished in West Virginia; that many West Virginia subscriptions have been and will be cancelled; and that these continuing losses cannot legally be visited upon the plaintiff because the statute itself is unconstitutional.

The complaint asks that § 33–6–33 be declared void; that the defendant State Insurance Commissioner and those over whom he has official control, be enjoined from giving any effect to the statute; and that damages in the amount of $50,000 plus costs and attorney's fees be levied against the defendant. The jurisdiction of this court is invoked under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity of citizenship), and 28 U.S.C. § 1343 (civil rights). An application to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 (repealed, 1976) and 2284 (since amended) was granted.[3]

NMR advances three legal theories to support its claim that § 33–6–33 is invalid. One is that the statute contravenes the free speech guarantee of the First Amendment to the United States Constitution as applied to the states through the Fourteenth. The other two involve claimed conflicts between § 33–6–33 and the Constitution of West Virginia.[4] The case is now before us upon the motion of the State Insurance Commissioner to dismiss the complaint.

Having considered both the motion to dismiss and the arguments and affidavits

1. W.Va.Code §§ 33–2–3 and 33–2–11 charge the state insurance commissioner with the statute's enforcement. A violator is subject to non-renewal, revocation, or suspension of its license, W.Va.Code §§ 33–3–11 and 33–4–1, and may be found guilty of a misdemeanor. W.Va.Code § 33–4–8.

2. Before § 33–6–33 was enacted in 1976, the state did not prescribe by statute the use of any particular private publication for the calculation of minimum vehicle values.

3. When this action was filed on June 18, 1976, § 2281 required the convention of a three-judge court to consider requests for federal injunctions against the execution of state statutes on the ground of their federal unconstitutionality.

§ 2284 governed the composition of such courts and the procedure by which such actions were to proceed. Public Law No. 94–381, §§ 1, 3, 90 Stat. 1119 (1976), which repealed § 2281 and amended § 2284, provides in § 7, 90 Stat. 1120, that neither the repeal nor the amendment shall apply to actions commenced on or before August 12, 1976.

4. Plaintiff alleges that the statute transgresses the "Free Speech and Press" provision of W.Va.Const. art. III, § 7, and that it constitutes, under W.Va.Const. art. VI, § 1, an impermissible delegation of legislative power to the National Automobile Dealers Association.

submitted in opposition thereto, we decline to entertain the claims that § 33–6–33 conflicts with the State constitution, and dismiss both of them without prejudice to plaintiff's right to reassert them in an appropriate State forum. Upon the claim that the statute violates the Federal Constitution, we enter summary judgment for the defendant.

### I

■ It is apparent from the complaint and the affidavits submitted by NMR that, even if true, the facts alleged and sworn to fall far short of demonstrating the invalidity of § 33–6–33 under the First and Fourteenth Amendments to the Constitution of the United States. Consequently, we reject the plaintiff's claims, *inter alia,* that the statute constitutes an invalid prior restraint, is overbroad and impermissibly vague, has a "chilling effect" on protected speech, and constitutes "censorship" of plaintiff's publication.

■ We agree, of course, that NMR's publication constitutes speech within the meaning of the First Amendment. *Cf. Bates v. State Bar of Arizona,* 433 U.S. 350, 363, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977); *Smith v. California,* 361 U.S. 147, 150, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). But the trouble we have with plaintiff's federal claim is that, assuming that § 33–6–33 absolutely forbids any insurers doing business in West Virginia from using any publication other than the National Automobile Dealers Association's guide in setting the value of motor vehicle accident claim settlements, at the most the statute results in an infringement upon plaintiff's profits, not its First Amendment rights.

Simply put, under no reasonable construction does § 33–6–33 prohibit NMR from publishing its "Red Book" or distributing it in West Virginia. Nor are insurers prohibited from or punished for purchasing the publication or reading it. The statute does not purport to dictate or regulate the

contents of the "Red Book", and since the statute does not outlaw any manner of speech, it cannot be said that it does so in a vague or "overbroad" way. In fact, upon careful reflection we conclude that this is not a First Amendment case at all.

True, plaintiff may find a less enthusiastic market for its publication among the state's insurers (as opposed to the members of the general public, bankers, and others to whom it sells) in the wake of the statute, but "not every action by the government which affects the press violates the first amendment." *P.A.M. News Corp. v. Butz,* 168 U.S.App.D.C. 376, 381, 514 F.2d 272, 277 (1975). "The inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of this [statute] upon freedom of expression." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 78, 96 S.Ct. 2440, 2456, 49 L.Ed.2d 310 (1976) (Powell, J., concurring). Since we find no such effect, the federal claim must be dismissed.

### II

■ Federal courts have an obligation to determine questions of their own jurisdiction *sua sponte. Atlas Life Insurance Co. v. W. I. Southern, Inc.,* 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939). Thus, although the defendant's motion to dismiss does not challenge the basic authority of this court to adjudicate the claims of conflict between § 33–6–33 and the Constitution of West Virginia,[5] we decline for two reasons to entertain the objections to the statute which rely solely upon state law: (1) such claims do not fall within the mandatory statutory grant of original subject matter jurisdiction to the federal courts, and (2) the particular non-federal claims asserted in this case are not appropriate subjects for adjudication under the theory of pendent federal jurisdiction.

---

**5.** Instead, defendant urges that, pending a preliminary state court resolution of the state law issues, this court should abstain from deciding the federal claim, since a resolution of the objections under state law might either render

consideration of the federal claim unnecessary or result in a clarification of the statute which would purge it of any First Amendment infirmities. In light of our disposition of the case, this suggestion is moot.

We are unaware of any federal statute which empowers, much less obligates, a federal district court to hear plaintiff's state law complaints. Standing alone, an attack upon a state statute on the sole ground that it violates state law is clearly not contemplated by the Congressional grant of either "federal question" jurisdiction, 28 U.S.C. § 1331, or "civil rights" jurisdiction, 28 U.S.C. § 1343. Nor is it of consequence that plaintiff has alleged diversity of citizenship between NMR and the defendant State Insurance Commissioner. Where, as here, a state officer is sued merely as the representative or the "arm or alter ego" of the State, for diversity purposes the action is treated as one against the State. *See Moor v. County of Alameda,* 411 U.S. 693, 717–721, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *O'Neill v. Early,* 208 F.2d 286 (4 Cir. 1953).[6] The diversity statute, 28 U.S.C. § 1332, neither sanctions suit against a state nor contemplates that a state is a "citizen" within the meaning of the statutory term. *Postal Telegraph Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894).[7]

Of course, the federal courts may exercise an auxiliary power, not strictly dependent upon the various jurisdictional statutes, to decide questions of state law which admittedly do not meet the subject matter requisites set forth by Congress. Under the doctrine of "pendent jurisdiction," an otherwise noncognizable claim that a state statute is void by reason of its conflict with a state constitution may be entertained in a federal forum if it arises from a· nucleus of operative facts common to an entertainable, contemporaneous claim under federal law over which the court does have jurisdiction. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The doctrine is one of discretion however, "not of plaintiff's right," and the power it confers "need not be exercised in every case in which it is found to exist." *Id.* at 726, 86 S.Ct. at 1139. Because NMR alternatively asserts that § 33–6–33 is void under the Federal Constitution, and since its state and federal claims arise from common facts, we have considered the propriety of adjudicating, as ancillary to the First Amendment issue, the questions raised under the Constitution of West Virginia. However, established guidelines for the exercise of this jurisdictional discretion compel us to decline to consider plaintiff's non-federal claims.

First, while we have doubts as to whether even the federal claim is of sufficient substance to vest this court with original juris-

---

**6.** It is possible for a subdivision of the state to have an existence sufficiently independent of the state to avoid this rule, *see, e. g., Moor, supra,* but this is clearly not the case with respect to the defendant insurance commissioner. His office is, by statute, designated a "state agency", W.Va.Code § 33–2–1, and he serves at the will and pleasure of the governor. W.Va.Code § 6–7–2a (as amended, 1977). He is vested with powers and given responsibilities which are essential to the performance of a uniquely governmental function. W.Va.Code §§ 33–2–1, *et seq.* In contrast, where entities with some relation to the state have been found to be sufficiently dissociated from the state to be subject to the diversity jurisdiction, they have possessed indicia of separateness not attributable to the defendant in this case. *See, e. g., Geeslin v. Merriman,* 527 F.2d 452 (6 Cir. 1975). *See generally,* Wright, Miller & Cooper, Federal Practice and Procedure, vol. 13, § 3524 (1975).

**7.** To make clear the grounds for our conclusion that this action does not implicate the diversity jurisdiction, we emphasize that the question of whether or not suit against a state officer is authorized by § 1332 is an issue quite distinct from that which was propounded and decided in the case of *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). There the issue was whether the Eleventh Amendment barred an action against a state officer, brought under the "federal question" statute, to enjoin his enforcement of a state statute that allegedly violated the federal constitution. Although the Court held that, when acting unconstitutionally in a federal sense, a state officer cannot invoke the Eleventh Amendment's protection, the case had nothing to do with the scope of the statutory grant of diversity jurisdiction. Indeed, it is uniformly recognized that even an express waiver of sovereign immunity or a consent to suit cannot subject a state or its "alter ego" to jurisdiction under § 1332. *See, e. g., State Highway Commission v. Utah Construction Co.,* 278 U.S. 194, 199–200, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *O'Neill v. Early,* 208 F.2d 286, 289 (4 Cir. 1953); *Johnson v. Texas Dept. of Corrections,* 373 F.Supp. 1108, 1110 (S.D.Tex. 1974).

diction and to require the convening of three judges under the applicable law, those doubts are resolved in plaintiff's favor in light of the absence of any apparent precedent of a controlling nature. *See Hagans v. Lavine,* 415 U.S. 528, 534–543, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). But it does not follow from this acknowledgment of jurisdiction to decide the federal claim under 28 U.S.C. §§ 1343 and 2281 that the state constitutional law issues may tag along. To the contrary, in *Gibbs* the Court cautioned that although a federal claim may be substantial enough to confer jurisdiction upon the court, it can nonetheless be so hollow as to provide no bootstrap for deciding in federal court issues which, absent the tenuous federal claim, could be raised only in the courts of a state.

> [R]ecognition of a federal court's wide latitude to decide ancillary questions of state law does not imply that it must tolerate a litigant's effort to impose upon it what is in effect only a state law case. Once it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage, the state claim may fairly be dismissed.

*Gibbs, supra,* 383 U.S. at 727, 86 S.Ct. at 1139. It is obvious from our previous discussion that NMR's federal claim is so frail that the assertion of pendent jurisdiction over the non-federal claims would amount to an invitation to any plaintiff desirous of an otherwise unavailable federal forum to supplement his non-federal case with an imaginative but predictably meritless question of federal law. *See* the separate opinions of Powell, J., and Rehnquist, J., in *Hagans v. Lavine, supra,* 415 U.S. at 550–552 and 552–565, 94 S.Ct. 1372.

■ Second, where, as here, the federal claim upon which the action is predicated, though substantial in a jurisdictional sense, is "dismissed before trial, * * * the state claims should be dismissed as well." *Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. at 1139. In the absence of unusual circumstances constituting prejudice to the plaintiff, the failure to do so would likely be an abuse of discretion. *Nolan v. Meyer,* 520 F.2d 1276, 1280 (2 Cir. 1975), *cert. denied,* 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

Finally, even absent the preceding considerations, our decision not to take jurisdiction of the state claims is required by the underlying rationale of *Gibbs,* which "centers upon considerations of comity and the desirability of having a reliable and final determination of the state claim by state courts having more familiarity with the controlling principles and the authority to render a final judgment." *Hagans v. Lavine, supra,* 415 U.S. at 548, 94 S.Ct. at 1385. *See Gibbs, supra,* 383 U.S. at 726, 86 S.Ct. 1130. The "Freedom of Speech and Press" provision of the Constitution of West Virginia, upon which plaintiff bases the first of its state law arguments, has never been authoritatively construed by the West Virginia Supreme Court of Appeals except with respect to the narrow and inapplicable areas of defamation and the publication of falsehoods. We deem it advisable that it should be construed in the first instance by the most qualified interpreter, the highest court of the State. *Cf. Samuel v. University of Pittsburgh,* 375 F.Supp. 1119, 1128 (W.D.Pa.1974), *appeal dismissed* 506 F.2d 355 (3 Cir. 1974). Nor has the recently enacted statute which NMR attacks ever been addressed or interpreted by the West Virginia Court. Given the plaintiff's own admission that the statute is susceptible of varying interpretations, and the total absence of any guiding legislative history, we would be entering an area of inquiry for which a federal court is ill-suited were we to consider NMR's alternative claim that the statute constitutes an unconstitutional delegation of state legislative authority, especially in light of the great emphasis West Virginia's highest court places upon statutory interpretation when the delegation of legislative power is at issue.[8] *Cf. Catalano v. Dep't. of Hospitals,* 299 F.Supp. 166, 175 (S.D.N.Y.1969).

---

8. *See, e. g., West Virginia Housing Development Fund v. Waterhouse,* W.Va., 212 S.E.2d 724 (1974); *City of Charleston v. Coghill,* W.Va., 207 S.E.2d 113 (1973).

Accordingly, we decline to entertain the claims that § 33–6–33 violates the Constitution of West Virginia, and they are dismissed without prejudice to plaintiff's right to litigate them in an appropriate State forum.