**Fred S. NOLAN, et als., Plaintiffs,**

v.

**OTIS ELEVATOR COMPANY, Defendant.**

**Civ. No. 82–1888.**

United States District Court, D. New Jersey.

Aug. 12, 1982.

Greenberg, Kelley & Prior by William S. Greenberg and James F. Schwerin, Trenton, N.J., for plaintiffs.

Goodman, Stoldt, Breslin & Horan by John D. Horan, Hackensack, N.J., Peter F. Healey and William B. Peterson, Washington, D.C., of counsel, for defendant.

## OPINION

BIUNNO, Senior District Judge.

This is a case removed here from Superior Court of New Jersey, in which the court initiated inquiry by order to show cause on the question whether the case was removed improvidently and without jurisdiction so as to require its remand under 28 U.S.C. § 1447(c).

The case is not removable under diversity jurisdiction because defendant has dual citizenship in New Jersey (where it was incorporated) and Connecticut (where its principal place of business is located), see 28 U.S.C. § 1332(c), and 28 U.S.C. § 1441(b), last sentence. Only defendants who are not citizens of the forum may remove a case on diversity grounds. Beyond that, all but one of the plaintiffs appear to be citizens of New Jersey.

Thus, removal is grounded (if it can be sustained at all) on grounds that the case "arises under" the Constitution, laws or treaties of the United States, 28 U.S.C. § 1331(a), or under an Act of Congress regulating commerce, 28 U.S.C. § 1337.

The complaint, which is by 25 named plaintiffs, alleges that all the plaintiffs were employees of defendant Otis, were employed in management positions, and were not represented by any labor union. It says that during 1980, all plaintiffs were terminated as part of a reduction in force effected for financial reasons at the Harrison plant, with a final work date of May 16, 1980. [NOTE: the Answer alleges that only 20 plaintiffs were so terminated; it says that four were transferred to another facility at Yonkers, N.Y. and were later terminated, or retired, while a fifth went on sick-leave and then retired on disability pension. Assuming these allegations to be true, the case asserted by the other 20 remains unaffected].

The complaint alleges that each plaintiff had 25 or more years of service with Otis at termination, and that each was under 55 years of age, and received a severance benefit of 1 week's pay for each year of service.

It says that "other employees" who had 25 years' or more service when terminated but who were 55 years of age or older, received "benefits greatly exceeding those paid to plaintiffs." It does not say whether the "other employees" were also management employees not represented by a labor

union, nor does it say whether the other employees received a severance benefit plus some other kind of benefit, or no severance benefit but some other kind of benefit instead.

What it does say, for each plaintiff, is that had the individual been 55 years or more old, and was treated as were those of that age, each would have received benefits worth $X more than was paid (each amount being in excess of $10,000).

It then alleges that Otis' action in paying greater benefits to those 55 years of age or more, with 25 years or more of service, than was paid to those under 55 with like service, was an unlawful discrimination as to a term, condition or privilege of employment because of age, in violation of N.J.S.A. 10:5–12(a), and claim is made for the differential.

Whether or not the claims are valid ones under State law is not the question here. New Jersey statutes dealing with various kinds of discrimination under various circumstances are quite old, going back to the 1800's. The modern Law Against Discrimination originated as N.J.P.L. 1945, c. 169, and was designed to fulfill guarantees of civil rights provided in the Constitution of 1844, which were continued in the Constitution of 1947, as well as in exercise of the police power and to promote the general welfare, see N.J.S.A. 10:5–2.

N.J.Const.1844, Art. I, par. 1, declared the natural and inalienable right of pursuing and obtaining safety and happiness. Art. I, sec. 4, declared that no person was to be denied the enjoyment of any civil right, merely on account of his religious principles. N.J.Const.1947, by Art. I, par. 1, continued the happiness clause, and enlarged the civil rights clause in Art. I, par. 5 to forbid discrimination because of religious principles, race, color, ancestry or national origin.

The New Jersey Law Against Discrimination did not list age, marital status or sex as forbidden criteria in various contexts. These were added later by amendment.

At the time "age" was added as a forbidden criterion in employment contexts but not for other circumstances, the act was also amended to include what is now N.J. S.A. 10:5–2.1, which provided in part that nothing in the Law Against Discrimination is to be construed "to interfere with the operation of the terms or conditions and administration of any bona fide retirement, pension, employee benefit or insurance plan or program." See N.J.P.L.1962, c. 37.

These features, of course, do not tend to disclose that the case "arises" under any federal source of law. They deal only with state law, and provide no basis for removal.

The petition for removal asserts other facts. It asserts that the Harrison plant was shut down solely for financial reasons, its physical plant and equipment sold and employees terminated. It says that under a deferred compensation plan established for the Harrison plant, management employees not represented by a labor union who were 55 years of age or over and who had 25 years or more of service, were paid a special supplemental retirement benefit. This benefit is said not to have been payable by the terms of the plan to the plaintiffs as they were under age 55.

The petition asserts that plaintiffs cannot state a valid cause of action under state law because, by federal law the subject is preempted by ERISA, 29 U.S.C. § 1001, et seq. If they have claims at all, it is argued that they arise under either ERISA or the federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.

Alternatively, it is said that ERISA preemption involves interpretation of that law and ultimately the Supremacy Clause, both of which are said to be unavoidable, which go to the heart of the validity of the claims.

As a second alternative it is argued that the claims arise exclusively under ERISA as an action by "participants" or "beneficiaries" to recover benefits or enforce rights under the terms of a plan, 29 U.S.C. § 1002(7) and (8).

While it is conceded that ADEA itself contains no preemption provision in respect

to state laws on age discrimination, it is argued that ERISA and ADEA taken together have this effect, and that as a consequence, the real nature of the claim is federal despite the plaintiffs' characterization of it, or that the claim is one that is exclusively governed by federal law so that plaintiffs are necessarily stating a federal cause of action no matter whether it is so articulated or not. See, e.g., such cases as *Burgess v. Charlottesville, etc.,* 477 F.2d 40 (CA 4, 1973); *Romick v. Bekins Van etc.,* 197 F.2d 369 (CA 5, 1952); *Johnson v. England,* 356 F.2d 44 (CA 9, 1966).

■ This is not the situation in this case. Plaintiffs' complaint states, and is intended to state, a claim under the state statute only. No claim is made under ERISA or under ADEA. The federal questions of preemption, and the like, even assuming they are valid, are raised as defenses and to support the counterclaim for declaratory judgment. This does not provide a basis for removal, see *Madsen v. Prudential Federal S & L,* 635 F.2d 797 (CA 10, 1980), cert. den. 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389; *Stone v. Stone,* 632 F.2d 740 (CA 9, 1980), cert. den. 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004; *First Nat'l etc. v. Aberdeen etc.,* 627 F.2d 843 (CA 8, 1980).

■ There is no need to review here the entire history of the removal statutes since the first Judiciary Act of 1789. It is sufficient to note that since the Act of March 3, 1887, from which the present statute, 28 U.S.C. § 1441 is derived, removal is not authorized in a case where the federal question is a matter of defense. See *State of Tennessee v. Bank of Commerce,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). Only a defendant may remove, *Chicago, etc. Co. v. Stude,* 346 U.S. 574, 74 S.Ct. 290, 98 L.Ed. 317 (1954), and so even a plaintiff who sues in state court and has a federal counterclaim asserted against him cannot remove, *Oregon, etc. v. Andrews,* 458 F.2d 382 (CA 9, 1972). See, also, *La Chemise Lacoste v. Alligator Co.,* 506 F.2d 339 (CA 3, 1974), cert. den. 421 U.S. 937, 95 S.Ct. 1666, 44 L.Ed.2d 94.

Another leading case is *Gully v. First Nat'l Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936), where the suit sought to be removed was to collect taxes under state law from a national bank, and was ordered remanded even though the state's power to levy the tax depended on federal law.

See, also, *Shamrock, etc. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941) which precludes a plaintiff against whom a counterclaim is asserted from removing under the statute.

No doubt there has been considerable debate about altering these principles, as in the ALI Study of the Division of Jurisdiction, etc., adopted in 1965 and 1968 (Philadelphia, 1969). The text of § 1312(a) there proposed would have allowed removal by a defendant on the basis of a federal defense or counterclaim, as well as by a plaintiff against whom a federal counterclaim was asserted, among others. The drafters' note says:

"Subsection (a) is a major change in present law. To allow removal on the basis of a federal defense or counterclaim is new."

The proposed draft has never been enacted, and is not law this court can apply.

Quite evidently, plaintiffs have sued in state court to make a state claim if it can be made. They may recognize that they have no federal claim or at least choose not to assert any. The federal defenses raised by Otis may preclude any recovery under state law. If so, that is a result to be achieved in the state court and provides no basis for removal here. On the other hand, there may turn out to be an area of state law for which federal law does not control. If that be the case, then that claim surely does not "arise" under federal law and cannot be removed. The age laws are different in various respects. The state law governs in the areas of employment, boycotts and credit transactions. The federal law applies only in employment. The state law applies from age 18 on up, with no upper limit. The federal law originally applied to ages 40–65, and was amended to ages 40–70.

There is no precedent binding on this court dealing with the interplay between

ERISA, ADEA and a state age discrimination law. Under all these circumstances, the court cannot say that the complaint asserts a federal claim disguised as a state claim by artful pleading. Whether the asserted state claim has any validity is a matter of defense. The Superior Court may conclude that the direction of N.J.S.A. 10:5–2.1 precludes recovery without regard to federal law.

Otis also argues that even if the complaint be remanded, jurisdiction should be retained over the counterclaim because it has an independent basis for federal jurisdiction. The precedents cited from the Court of Appeals in this circuit do not support the proposition. Neither *Rengo v. Molins,* 657 F.2d 535 (CA 3, 1981), nor *National Research v. Bartholomew,* 482 F.2d 386 (CA 3, 1973) was a removal case and so neither addresses the question involved here. *Ferguson v. Eakle,* 492 F.2d 26 (CA 3, 1973) was a removal case, but there was no issue of improvident removal or lack of jurisdiction. Rather, after an answer and counterclaim, there was a dismissal under F.R. Civ.P. 41 so far as the complaint was concerned, and Rule 41 itself requires retention of the counterclaim under those conditions.

The difficulty with the argument is that it ignores the matter of jurisdiction. The district courts are of limited statutory jurisdiction. If a case be removed improvidently and without jurisdiction under the removal statute, no jurisdiction is obtained by the filing of a counterclaim even though it states a federal claim.

In arriving at its conclusions, the court takes care to note that it has expressed no view on the opposing views presented on the merits of the federal defense, or, for that matter, on the possible inapplicability of the state statute sued on in light of the 1962 declaration, enacted at the same time that "age" was added to some parts of the statute, barring interference with any bona fide retirement, pension, employee benefit or insurance plan or program, N.J.S.A. 10:5–2.1, a provision of the same nature as that in ADEA, 29 U.S.C. § 623(f)(2).

Plaintiffs also seek the allowance of attorneys fees and costs. Precedents in other circuits are relied on for the proposition that attorneys fees are allowable on remand for improper removal. No claim is made that they are allowable here under *Roadway Express v. Piper,* 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

Assuming there is such authority (which the court need not decide), it is admittedly within the sound discretion of the court to make such allowance.

The court exercises its discretion to disallow costs, or attorneys fees. The matter was raised by the court on its own initiative, and most of the plaintiffs' brief, which was nearly double the maximum length allowed by General Rule 27 of this district was addressed to the merits of Otis's alleged federal defenses, a subject which this court could not deal with unless removal was proper.

The conclusion is that the case was removed improvidently and without jurisdiction, and so must be remanded to Superior Court of New Jersey as required by 28 U.S.C. § 1447(c).