**PENNSYLVANIA HUMAN RELATIONS COMMISSION, Plaintiff,**

v.

**USAIR, INC., Defendant.**

**Civ. A. No. 85–806.**

United States District Court,
W.D. Pennsylvania.

Aug. 12, 1985.

Michael Foreman, Pittsburgh, Pa., for plaintiff.

Jeffrey S. Blum, Pittsburgh, Pa., and Susan S. Sauntry, Washington, D.C., for defendant.

## MEMORANDUM OPINION

ZIEGLER, District Judge.

(1) Defendant, USAir, filed a petition for removal to this court following proceedings before the Pennsylvania Human Relations Commission. Pending before the court is the motion of the Commission to remand.

(2) On December 28, 1978, pursuant to Section 9(a) of the Pennsylvania Human Relations Act, the Commission, through its executive director, Homer Floyd, filed a charge against USAir alleging age discrimination in the hiring of flight crews in violation of Section 5(a) of the PHRA. 43 Pa. S.A. § 955(a). After an investigation, the Commission found probable cause to believe that defendant had violated the Act and defendant was served with a formal probable cause finding on October 13, 1983. Conciliation was unsuccessful and defendant was notified on March 7, 1985 that a public hearing would be held. USAir petitioned for removal on April 4, 1985.

(3) Defendant contends that removal is appropriate under 28 U.S.C. § 1441(a) because "any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by defendant or defendants to the district court of the United States ..." Defendant's assertion of original jurisdiction is based on 28 U.S.C. § 1332. The Commission rejoins that the action is not removable and that subject matter jurisdiction is lacking because, as an instrumentality of the state, the Commission is not a "citizen" within the meaning of the diversity statute. Plaintiff also claims that USAir is actually a "citizen" of Pennsylvania; the Commission is not a "state court" from which actions can be removed; and that removal was untimely. Furthermore, plaintiff urges that significant state law issues are involved and therefore we should abstain, even if jurisdiction does exist.

(4) It is settled that a state or its alter ego is not a "citizen" for diversity purposes. *Stone v. South Carolina*, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962 (1886), *State Highway Commission of Wyoming v. Utah Construction Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929). Hence, diversity jurisdiction is absent in a suit between a state or its alter ego and a citizen of another state. *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192,

39 L.Ed. 231 (1894); *Ramada Inns v. Rosemount Memorial Park Association*, 598 F.2d 1303 (3d Cir.1979). In the present case, if the Commission is an alter ego of the Commonwealth of Pennsylvania, the state is the real party in interest and plaintiff's motion to remand must be granted.

■ (5) Questions concerning the citizenship of state agencies for purposes of diversity are unavoidably linked to questions of agency immunity under the Eleventh Amendment. Despite the differing policies underlying the two inquiries, they are almost identical. *Blake v. Kline*, 612 F.2d 718, 726 (3d Cir.1979). The only recognized distinction is that a state may waive immunity but lack of subject matter jurisdiction may never be waived. *State Highway Commission, supra*, 278 U.S. at 199–200, 49 S.Ct. at 105–106. Therefore, determination of the Commission's citizenship is similar to an analysis of Eleventh Amendment sovereign immunity.

■ (6) When analyzing the citizenship or immunity status of state agencies, the inquiry narrows to the question whether the state is the real party in interest or, phrased another way, whether the agency is an arm or alter ego of the state. Factors involved include: the possibility that state resources may be used to satisfy a judgment against the agency; the degree of agency autonomy, *Blake, supra* at 722; and the extent of the state's interest in the outcome of the litigation. *Ramada Inns, supra* at 1303. The first factor is not helpful to the present analysis, being more suited to litigation in which an agency is a defendant. Since the present suit is an enforcement action brought by the Commission, and USAir is not seeking money damages, the first factor must be accorded little weight.

■ (7) The factors for determining the degree of autonomy of a state agency were articulated in *Urbano v. Board of Managers of New Jersey State Prison*, 415 F.2d 247, 251 (3d Cir.1969) as follows: Whether the agency performs a proprietary or a governmental function; whether the agency is separately incorporated, has the power to sue and enter contracts, and has

autonomy over its operations; whether agency property is immune from state taxation; and whether the state has immunized itself from responsibility for agency operations.

(8) The relevant information concerning the Commission is provided by the appropriate Pennsylvania statutes. Plaintiff's powers and duties are set forth in the Pennsylvania Human Relations Act, 43 Pa. S.A. §§ 956–960, and the agency is also subject to the provisions of Administrative Code of 1929. 71 Pa.S.A. § 51 et seq.

(9) Plaintiff is a bipartisan body located within the Office of the Governor. The Governor appoints all members and chooses its chairman. 43 Pa.S.A. § 956. The Commission's primary function is to enforce the provisions of the PHRA, an act defined by the General Assembly as "an exercise of the police power of the Commonwealth." 43 Pa.S.A. § 952(c). In executing its mandate, plaintiff has the authority to promulgate rules and formulate enforcement policies; to investigate either a citizen's complaint, or otherwise, any Pennsylvania employer including the Commonwealth and subdivisions for alleged violations of the PHRA; to conduct hearings to determine whether violations have occurred; and to issue judicially enforceable orders commanding compliance with the Act. Plaintiff is also required to file annual reports and to investigate certain matters at the request of the Governor. 43 Pa.S.A. §§ 956–960. The Administrative Code of 1929, 71 Pa.S.A. §§ 501–507, also forbids plaintiff from entering contracts for certain purchases, repair of buildings, bonds, or insurance without prior approval. The PHRC is entirely dependent on Commonwealth for its funding because the PHRA makes no provision for the collection of fines.

(10) We hold that, in exercising state police power, the Commission is performing a governmental and not a proprietary function. It is not separately incorporated. It may not freely enter contracts and its power to sue is limited to filing "petitions in court" to secure enforcement of its orders. 43 Pa.S.A. § 960. While it may investigate on complaint and employ necessary coun-

sel, autonomy over its operations is limited by legislative control of funding and the executive's power to order certain kinds of investigations. There is no statutory manifestation that Pennsylvania has immunized itself from responsibility for the agency's actions. There is also no indication that agency property is immune from state taxation. From the foregoing, we conclude that the Commission's degree of autonomy is less than state agencies that have been determined not to be alter egos of the Commonwealth, such as the Pennsylvania Turnpike Commission which was held to be a "legislatively ordained municipal corporation." *Gerr v. Emrick,* 283 F.2d 293, 296 (3d Cir.1960).

■ (11) For a state to be a real party in interest, the extent of interest must be more than a general governmental interest in the welfare of all citizens and in securing compliance with its laws. *Missouri, Kansas, & Texas Ry. Co. v. Missouri Railroad & Warehouse Commission,* 183 U.S. 53, 61, 22 S.Ct. 18, 21, 46 L.Ed. 78 (1901); *Ramada Inns, supra,* at 1303. Defendant, relying on *Missouri Railroad,* contends that Pennsylvania has little more than a general governmental interest in this case and that the real parties in interest are defendant and an unspecified class of pilot applicants.

(12) The Commission argues that it is an enforcement arm of the Commonwealth, has no separate existence and, as such, Pennsylvania has an interest in all agency actions. Further, plaintiff relies on the recent pronouncement of the Pennsylvania Supreme Court. In *Murphy v. Commonwealth of Pennsylvania Human Relations Commission,* 506 Pa. 549, 486 A.2d 388 (1985), the state court observed that with respect to a complaint initiated by plaintiff, "while often benefiting individual claimants, [it] is filed on *behalf of the Commonwealth* as opposed to individual claimants with the intent of vindicating *the public interest* by eliminating discriminatory practices." 486 A.2d at 393 (Emphasis in original).

(13) Considering the *Murphy* view and the functions of the PHRC, we conclude that the Commonwealth has a specific and direct interest in securing compliance with the PHRA. The state created the Commission to enforce the PHRA, and the sovereign's interest in enforcing the act is not diminished by creation of a special enforcement mechanism. Moreover, if the Pennsylvania Attorney General had brought the present action against USAir, no question of removal would exist. Shifting the enforcement apparatus of an act from the state government at large to a specialized state agency should have no effect upon the nature of the state's interest.

■ (14) We conclude that the PHRC, within the context of this litigation, is an alter ego of the Commonwealth of Pennsylvania. The PHRC has a low degree of autonomy and is financially dependent on the state government. As the alter ego of the Commonwealth, it cannot be considered a "citizen" within the meaning of the federal diversity statute. We lack subject matter jurisdiction and plaintiff's motion to remand must be granted. In reaching this conclusion, we need not consider and we express no opinion on the other claims advanced by the Commission in support of its motion.