David LEVINSON, Insurance Commissioner of the State of Delaware, Plaintiff,

v.

CONTINENTAL INSURANCE SERVICES, INC., a Delaware corporation, and Continental Insurance Services, Inc., a Pennsylvania corporation, and Steinmann & Bickerstaff Associates, Inc., a Pennsylvania corporation, Defendants.

Civ. A. No. 85–215 LON.

United States District Court, D. Delaware.

March 3, 1987.

David W. Lynch, Dept. of Justice, Dover, Del., for plaintiff.

Jerome O. Herlihy, and Kenneth E. Fink, of Herlihy & Wier, Wilmington, Del., for defendants.

## OPINION

LONGOBARDI, District Judge.

This declaratory judgment action was filed in the Court of Chancery of the State of Delaware in and for New Castle County in March of 1985. Plaintiff David Levinson, the Insurance Commissioner of the State of Delaware, brought the action pursuant to 10 Del.C. §§ 341 and 6501 seeking a declaratory judgment that an agreement entered into on December 10, 1979, by and between the former State Insurance Commissioner, David Elliot, and Steinmann & Bickerstaff Associates, Inc. is void. Levinson also seeks the equitable remedies of recision and reformation.

On April 8, 1985, Defendants petitioned for removal to this Court pursuant to 28 U.S.C. § 1441(a). Defendants represented that the Court would have original jurisdiction over the matter pursuant to 28 U.S.C. § 1332 "based upon the fact that there exists diversity of citizenship between the real parties and the amount of controversy is in excess of Ten Thousand ($10,000.00) Dollars...." Docket Item ("D.I.") 1, ¶ 9.

There have been various procedural skirmishes over the petition for removal,[1] but apparently Levinson has never disputed the propriety of removal of a case in which the State is apparently a real party in interest. In October, 1986, this Court contacted the parties and *sua sponte* raised the issue of whether a case involving the Insurance Commissioner as Plaintiff with jurisdictional averments grounded solely in diversity could properly be removed to federal court. For whatever reason, neither Plaintiff nor Defendants chose to address the issue in their supplemental briefing. To this end, the Court initiated a telephone conference on February 25, 1987, to once again raise the issue with the parties.

A District Court may raise the issue of subject matter jurisdiction *sua sponte* at any time during the pendency of a lawsuit. *See* Fed.R.Civ.P. 12(h)(3); *see also Atlas Ins. Co. v. W.I. Southern, Inc.*, 306 U.S. 563, 59 S.Ct. 657, 83 L.Ed. 987 (1939) *noted in National Market Reports, Inc. v. Brown*, 443 F.Supp. 1301, 1304 (S.D.W.Va. 1978). Indeed, the Court has an obligation to determine questions regarding its own jurisdiction because such questions call into regarding its own jurisdiction because such questions call into question its power to adjudicate any given litigation.

■ Removal of actions originally brought in State court is governed by statute. *See* 28 U.S.C. § 1441. Generally, such actions are properly removable only if the District Court would have had original jurisdiction over the claim. *Id.* § 1441(a). In this instance, it is undisputed that the declaratory judgment action filed in the Court of Chancery raises no federal questions under either a federal statute or the United States Constitution. *See, e.g.,* 28

1. On April 12, 1985, Levinson filed a motion to strike the petition for removal based on a technicality: the failure of an attorney admitted to the Federal Bar of the District of Delaware to sign the petition. D.I. 6. The deficiency was cured by stipulation, D.I. 10, and the subsequent filing of an amended petition. D.I. 11. On May 17, 1985, Judge Schwartz requested briefing on a jurisdictional issue raised on the face of the pleadings. In the complaint, the Commissioner named as a Defendant Continental Insurance Services, Inc., a Delaware corporation. Hence, on the face of the pleadings, complete diversity was absent. That issue was briefed by the parties. On December 17, 1986, the Court granted both sides leave to file supplemental briefing because of a substitution of counsel for the Defendants. D.I. 21. Again, neither side addressed the present issue.

U.S.C. § 1331, 1441(a) and (b).[2] Therefore, jurisdiction must be based on diversity of citizenship under 28 U.S.C. § 1332. In point of fact, as noted *supra*, that is what the petition for removal avers.

■ It is well-settled that a State or its alter ego is *not* a "citizen" for purposes of diversity. *Pennsylvania Human Relations Com'n v. USAir, Inc.*, 615 F.Supp. 75, 76 (W.D.Pa.1985) (noting *Highway Com'n v. Utah Const. Co.*, 278 U.S. 194, 49 S.Ct. 104, 73 L.Ed. 262 (1929); *Stone v. South Carolina*, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962 (1886)); *see* 1A J. Moore, *Federal Practice* ¶ 0.161[1.2]; 14a C. Wright, A. Miller, and E. Cooper, *Federal Practice & Procedure* § 3723 n. 34. "Hence, diversity jurisdiction is absent in a suit between a state or its alter ego and a citizen of another state." *Pennsylvania Human Relations Com'n*, 615 F.Supp. 76 (noting *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894); *Ramada Inns, Inc. v. Rosemount Memorial Park Ass'n*, 598 F.2d 1303 (3d Cir.1979)); *see National Market Reports*, 443 F.Supp. at 1305.

■ Further, as the Third Circuit has noted, while there is clearly a relationship between eleventh amendment sovereign immunity and this aspect of diversity jurisdiction, courts have consistently maintained one distinction. A State can waive its eleventh amendment immunity but it cannot waive a lack of subject matter jurisdiction. *Blake v. Kline*, 612 F.2d 718, 726 n. 16 (3d Cir.1979), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980) (quoting *Ramada Inns*, 598 F.2d at 1309 (Seitz, C.J., concurring)); *see Highway Com'n.*, 278 U.S. at 199–200, 49 S.Ct. at 105–06; *Harris v. Pennsylvania Turnpike Commission*, 410 F.2d 1332, 1333 n. 1 (3d Cir.1969), *cert.*

*denied*, 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970).

During the telephone conference of February 25, 1987, all parties agreed that Commissioner Levinson brought the action in the Court of Chancery in his official capacity and as a representative of the State. At least two other courts have dealt with the status of State insurance commissioners for diversity purposes and, in that context, have held them to be alter egos of their respective States. *See Gunter v. Ago Intern., B.V.*, 533 F.Supp. 86, 88 (N.D.Fla. 1981); *National Market Reports*, 443 F.Supp. at 1305.

Thus, the dispositive issue is whether the State is a real party in interest in the litigation, *i.e.*, whether the Insurance Commissioner is the alter ego of the State. The focus in such an inquiry is whether the Insurance Department possesses "corporate powers." *Accord Moor v. County of Alameda*, 411 U.S. 693, 717–21, 93 S.Ct. 1785, 1799–1801, 36 L.Ed.2d 596 (1973), *noted in Gunter*, 533 F.Supp. at 88; *National Market Reports*, 443 F.Supp. at 1305. In short, the Court must determine if the Insurance Department has an existence sufficiently independent and autonomous of the State to avoid the general rule.

The appropriate analysis for determining alter ego status was discussed in detail by the court in *Pennsylvania Human Relations Commission, supra*. Three factors are generally considered: (1) the possibility that State resources could be used to satisfy a judgment against the agency, *see Blake*, 612 F.2d at 722; (2) the degree of agency autonomy, *id.*; and (3) the extent of the State's interest in the outcome of the litigation. *Ramada Inns*, 598 F.2d at 1303,

**2.** Because a federal question must be raised explicitly or implicitly on the face of the complaint, federal subject matter jurisdiction cannot be created by a defense raising a federal question, *see, e.g., Tennessee v. Union and Planter's Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894), *noted in Nolan v. Otis Elevator Co.*, 560 F.Supp. 119, 122–23 (D.N.J.1982); *see also Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908), or by a counterclaim which raises a federal question.

*See, e.g., Rath Packing Co. v. Becker*, 530 F.2d 1295, 1303 (9th Cir.1975), *aff'd*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977); *Nolan*, 560 F.Supp. at 122–23; *Federal Land Bank of Columbia v. Cotton*, 410 F.Supp. 169, 170 n. 1 (N.D.Ga. 1975) (citations omitted) *superseded by statute and overruled on other grounds, Cotton v. Federal Land Bank of Columbia*, 647 F.Supp. 37, 38–39 (M.D.Ga.1986); *see also Coditron Corp. v. AFA Protective Systems, Inc.*, 392 F.Supp. 158, 161 (S.D.N.Y.1975).

noted in *Pennsylvania Human Relations Com'n*, 615 F.Supp. at 77–78.

 Because the instant action was instituted by the Insurance Commissioner, the first factor is of diminished importance.[3] Additionally, in considering the third factor, "the extent of interest must be more than a general governmental interest in the welfare of all citizens and in securing compliance with its laws." *Pennsylvania Human Relations Com'n*, 615 F.Supp. at 78 (noting *Missouri Ry. Co. v. Missouri RR Comrs.*, 183 U.S. 53, 61, 22 S.Ct. 18, 21, 46 L.Ed. 78 (1901)). In this instance, I conclude that Delaware does indeed have a substantial interest, beyond broad concerns over the general welfare of its citizens, in the outcome of this lawsuit. The action seeks a determination that the agreement is beyond the powers of the State Insurance Commissioner and hence invalid. As such, it involves the scope of authority of a State agency and interpretations of the State Insurance Code.

 Therefore, the major issue is the degree of autonomy of the Insurance Department. In *Pennsylvania Human Relations Commission*, the court applied the analysis adopted by the Third Circuit in *Urbano v. Board of Managers*, 415 F.2d 247, 251 (3d Cir.1969) (citations omitted).[4] The Third Circuit noted four factors to be considered in determining alter ego status: (1) whether the agency performs a proprietary or governmental function; (2) whether the agency is separately incorporated, has the power to sue and be sued and/or enter into contracts, and has autonomy over its operations; (3) whether agency property is immune from state taxation; and (4) whether the State has immunized itself from responsibility for agency operations. *Urbano*, 415 F.2d at 251 *construed in Pennsylvania Human Relations Com'n*, 615 F.Supp. at 77–78.

### 1. Proprietary or Governmental Function

The Insurance Department is charged with a wide range of regulatory duties under the Delaware Code. *See* 18 Del.C. §§ 301–333. In the main, these duties center on oversight of the insurance industry in Delaware. The Commissioner is elected to a four year term and commissioned by the Governor. 18 Del.C. § 302(b). As such, I conclude that the Department exercises a governmental function.

### 2. Separate Corporate Powers

There is no indication that the Department is separately incorporated. In point of fact, the Code specifically provides that it is "a department of state government." 18 Del.C. § 301. The Code provides that the Commissioner may enforce any lawful order made or action taken by him, through the Attorney General. 18 Del.C. § 316(a). Likewise, if the Commissioner has reason to believe that a person has violated Title 18 or other applicable laws and prosecution is warranted, he must give the relevant information to the Attorney General who should then promptly institute proceedings thereon. *Id.* § 316(b).

In 1985, the Delaware Legislature established the Insurance Commissioner Regulatory Revolving Fund to be used in "the operation of the office of the State Insurance Commissioner in the performance of the various functions and duties required of the office by law." 18 Del.C. § 308(b).[5]

---

3. Either the State or the Department would have to pay for the contract services should the Commissioner lose the declaratory judgment action. Generally, this factor is more suited to litigation in which the State agency is a defendant. *See infra* pp. 278–79.

4. The *Urbano* factors are used to determine the propriety of eleventh amendment immunity. *See, e.g., Smith v. New Castle County Vo-Tech Sch. Dist.*, 574 F.Supp. 813, 817 (D.Del.1983); *King v. Caesar Rodney Sch. Dist.*, 396 F.Supp. 423, 427 (D.Del.1975). Central to that issue is whether the State is a real party in interest. "The conclusion that must be reached before the Eleventh Amendment may be interposed is whether the state is the real party in interest." *Urbano*, 415 F.2d at 250 (citations omitted). Therefore, the factors are relevant to this inquiry.

5. "Except as otherwise expressly provided, the Commissioner shall promptly deposit to the credit of the General Fund all fees, charges, administrative fines, taxes and other funds col-

Hence, all of the assessments, examination fees or other fees are paid into the State Treasury for the credit of the Fund. *Id.* § 308(c). The use of the funds in the operation of the Department is to be authorized by the General Assembly. *Id.* All fees and/or taxes not specifically enumerated in section 308(c) are to be deposited in the State's General Fund. *Id.* Likewise, "[f]unds in the ... fund shall be used by the Commissioner in the performance of his various functions and duties involved in the oversight of insurance companies as provided by law, subject to annual appropriation by the General Assembly for the salaries and other operating expenses of the office." *Id.* § 308(d). Finally, if there remains an unencumbered balance of greater than $70,000 in the Fund at the close of a fiscal year, that excess "shall cause the Insurance Commissioner to reduce assessments or fees collected in the next fiscal year." *Id.* at 308(e).

The Code does not explicitly authorize the Commissioner to enter into contracts. Section 313 does, however, set forth a broad statement of the Commissioner's powers. "The Commissioner shall have the powers and authority expressly vested in him by or reasonably implied from this title," *id.* § 313(b), and "such additional rights, powers and duties as may be provided by other laws of this State." *Id.* § 313(d).

On the basis of these factors, I conclude that the Department does not possess sufficiently distinct corporate powers to warrant a determination that it is not the alter ego of the State. *See Gunter,* 533 F.Supp. at 88 (Florida Department of Insurance "does not possess corporate-type powers"); *National Market Reports,* 443 F.Supp. at 1305 n. 6 (West Virginia Insurance Commissioner "clearly not" sufficiently independent from the State to deny alter ego status).

**3. Agency Property Immune from State Taxation**

The Code apparently does not deal directly with this issue.

lected by him for the use of this State." 18

**4. State Immunity**

The State does not appear to have explicitly immunized itself from responsibility for the Department's operations.

### CONCLUSION

As such, because it is apparent that Levinson is acting in his official capacity on behalf of the State and that the Insurance Department is an alter ego of the State, I conclude that there is no diversity of citizenship for purposes of 28 U.S.C. §§ 1332 and 1441(a). There is no other basis for the original jurisdiction of this Court. Therefore, the case is not properly before this Court and must be returned to the Court of Chancery.