The **STATE OF LOUISIANA**, et al.

v.

**SPRINT COMMUNICATIONS CO.**, et al.

**Civ. A. No. 94–2650.**

United States District Court,
M.D. Louisiana.

June 28, 1995.

Patrick W. Pendley, Plaquemine, LA, Victor L. Marcello, Talbot, Carmouche, Marchand, Marcello & Parenton, Gonzales, LA, and Robert H. Carpenter, Jr., Office of the Atty. Gen., Dept. of Justice, Baton Rouge, LA, for plaintiffs.

Henry D. Salassi, Jr., John F. Olinde, Jose S. Canseco, and Charles P. Blanchard, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, LA, for defendants Sprint Communications Co., L.P., U.S. Telecom, Inc., Utelcom, Inc. and Ucom, Inc.

M. Lizabeth Talbott and Galen S. Brown, Lamothe & Hamilton, New Orleans, LA, for MCI Telecommunications Corp.

## RULING ON MOTION TO REMAND

JOHN V. PARKER, Chief Judge.

This matter is before the court on the motion of plaintiffs to remand this action to the Eighteenth Judicial District Court for

the Parish of West Baton Rouge.[1] Oral argument is not necessary. Subject matter jurisdiction is allegedly based on federal question and diversity of citizenship. 28 U.S.C. §§ 1331, 1332.

■ The individual plaintiffs, claiming to act as class action representatives, allege that they, or their ancestors in title, granted to Missouri Pacific Railway ("Mo–Pac") and Illinois Central Gulf Railroad Co. ("ICG") conventional "rights-of-way" of passage [2] "for railroad purposes" across property which they owned. Pursuant to these servitudes, Mo–Pac and ICG constructed railways across plaintiffs' property. Beginning in 1985, Mo–Pac and ICG granted the defendant communication companies permission to install fiber optic transmission lines on the property of the plaintiffs over which the railroads had previously been granted servitudes. Defendants then installed fiber optic lines within the railroad servitudes and across plaintiffs' property. Individual plaintiffs allege that at no time did defendants inform plaintiffs of their activities, seek permission to enter plaintiffs, lands, or offer to purchase servitudes. The State of Louisiana claims that it owns certain waterbottoms under or over which defendants have installed transmission lines without obtaining servitudes for such use. The state court petition is not entirely clear but Louisiana apparently also asserts claims similar to those of the individual plaintiffs under servitudes previously granted by the State. All plaintiffs seek compensation for the use of servitudes over or under property which they own and individual private landowners additionally seek damages for trespass.

Defendants' Notice of Removal alleges three principal grounds on which it bases federal jurisdiction: (1) "fraudulent joinder"; (2) federal preemption; and (3) supplemental jurisdiction under 28 U.S.C. § 1367.

## I

## FEDERAL DIVERSITY OF CITIZENSHIP JURISDICTION

■ In examining subject matter jurisdiction, we start with the elementary but vitally important principle that federal district courts are courts of limited, not general jurisdiction. U.S. Const. art. 1, § 1 and 2. Unlike most state courts of general jurisdiction, in which jurisdiction is generally presumed unless the contrary is demonstrated, in federal district courts the absence of jurisdiction is generally presumed unless the party invoking federal jurisdiction clearly demonstrates that it exists. See generally, Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3522.

■ Defendants in this case have invoked federal jurisdiction and thereby have assumed the burden of demonstrating it. Each defendant is apparently diverse in citizenship from each of the individual named plaintiffs as required by 28 U.S.C. § 1332 but the presence of the State of Louisiana as a party plaintiff presents a different issue. For at least a century, it has been settled that a state plaintiff is not a citizen of itself for purposes of diversity jurisdiction. *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 15 S.Ct. 192, 39 L.Ed. 231 (1894) ("A state is not a citizen. And under the judiciary acts ... a suit between a state and a ... corporation of another state is not between citizens of different states, and ... [a district] court of the United States has no jurisdiction of it ...") 155 U.S. at 487, 15 S.Ct. at 194).

The Congress has provided in 28 U.S.C. § 1332 that federal district courts have diversity jurisdiction only where there is complete

1. Defendants have filed a motion to dismiss the claims of the State of Louisiana for failure to state a claim, despite the fact that they argue that Louisiana has been "fraudulently joined" as a party plaintiff and thus is a party whose presence should be ignored. As set forth infra the court lacks jurisdiction to pass upon that motion.

2. Both parties have referred to the property right at issue by the common law term, "right-of-

way". Under Louisiana law, a landowner who grants to another person the right of passage across the land, grants a personal servitude of right of use. LSA–CC art. 639; *Rock Island, A. & L. R.R. v. Gournay*, 205 La. 164, 17 So.2d 21 (1994) (dealing with a railroad "right of way"); *Missouri Pacific R. Co. v. Nicholson*, 460 So.2d 615 (La.App. 1 Cir.1984), writ denied 462 So.2d 185, 186.

diversity of citizenship between all plaintiffs and all defendants and the requisite jurisdictional amount in dispute is met. The presence of Louisiana as a party plaintiff bars removal of this action on the basis of diversity of citizenship because the state is not a citizen of itself.

■ Defendants seek to avoid the obstacle of the presence of the State of Louisiana in this suit by a novel theory of diversity jurisdiction: Because the claims of Louisiana against the defendants have no merit under applicable state law, the State is not a proper party plaintiff. Under this proposition, defendants assert that removal is proper because the presence of the state is properly ignored.

■ Defendants here attempt to apply the judicially created body of law referred to as "fraudulent joinder" of parties defendant. The jurisprudence is to the effect that where a plaintiff, for the purpose of defeating federal jurisdiction, files suit against a party not diverse in citizenship against whom he does not actually have a state law claim the joinder is "fraudulent" and will not defeat federal diversity of citizenship jurisdiction. In *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S.Ct. 35, 66 L.Ed. 144 (1921) and in many cases since, the Supreme Court has recognized that in protection of its congressionally created removal jurisdiction, a federal district court may scrutinize the actions of plaintiffs in *selecting defendants* and may ignore joinder of parties defendants against whom no real cause of action has been set forth, if they are joined for the purpose of defeating federal jurisdiction.

The only authority offered by defendants in support of their proposition that this court can examine the merits of the claims asserted by the State of Louisiana, determine that the claims have no merit and then ignore the presence of the State as a party plaintiff, is the case of *Ex Parte Nebraska*, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876 (1908). In that case, the name of the State of Nebraska was added to the list of plaintiffs in an action brought by the state attorney general and the Nebraska State Railway Commission (a state agency charged with the duty to regulate intrastate railway fares) for the purpose of enforcing intrastate passenger and freight railway fares. The Court treated the issue as one of "nominal parties", i.e., was the State of Nebraska the real party at interest? Finding that, although the state was a nominal party plaintiff on the record, "[I]t had no real substantial legal interest in the controversy," the Court held that Nebraska's nominal status could not defeat federal diversity jurisdiction. *Ex Parte Nebraska* relates more to the issue of standing to assert a claim than it does to the proposition for which defendants cite it.

There is certainly no "real party in interest" question here. The State of Louisiana claims that the defendants have, without permission from the State, erected or installed certain facilities upon property owned by the State. Louisiana seeks payment or removal of the facilities.

■ There is no question here as to ownership of the property involved; indeed, defendants concede that the State owns the property at issue. Defendants' entire argument regarding the position of the State is based upon a provision of Louisiana law, LSA–R.S. 45:781(A), which defendants argue exempts them from the necessity of payment for their use of these *state owned* lands.

■ Defendants' argument involves several steps. First defendants ask that the court scrutinize the claims of Louisiana against them; second they argue that the statute as it has been interpreted by the Louisiana courts plainly exempts them from the necessity to pay anything for the use of the State's property; and finally they conclude that the State clearly has no right to recover on the merits of its claims. Thus, defendants demand that the court decide the merits of the State's claims in connection with passing upon the jurisdictional issue. It cannot be disputed that an owner of property has standing to claim damages for interference with property rights. Here the owner of the property is beyond dispute the State of Louisiana which asserts claims for damages for interference with property rights. The issue of the *validity of the State's claims* is

not now before the court on this jurisdictional question.[3]

For the foregoing reasons, the court concludes that it lacks subject matter jurisdiction[4] under 28 U.S.C. § 1332 because there is not complete diversity of citizenship between all plaintiffs and all defendants, the State of Louisiana not being a citizen of itself.

## II

## FEDERAL QUESTION JURISDICTION

Generally, a suit may not be removed to a federal court on the basis of a federal defense including the defense of preemption; however, under the "complete preemption doctrine", once an area of state law has been completely preempted, any claim based on that preempted state law is considered a federal claim and therefore arises under federal law. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). Defendants maintain that federal railroad regulation is so pervasive, it has completely preempted the entire field of state law relating to railroads. The court disagrees.

Defendants cite *Missouri Pacific R.R. v. Railroad Commission of Texas*, 850 F.2d 264 (5th Cir.1988) for the proposition that virtually all state regulations affecting "the train itself" are preempted by federal law. While this may well be a correct shibboleth, it does not provide the answer to the question; the crux of the controversy at bar is not over the regulation of "the train itself" but over the real rights of Louisiana property owners. This action is not concerned with railroad safety, traffic, or rate-making or some other such typically regulated railroad activity, but whether Louisiana property owners are entitled to compensation for real rights they claim to possess.

Although the Congress has authorized railroads to enter into contracts with telephone, telegraph and cable companies to exchange services, 49 U.S.C. § 10749, the Congress

**3.** The court notes that rather than resting upon this relatively simple proposition, plaintiffs submit an extensive argument that under Louisiana law, the State does indeed have valid (or at least arguably valid) claims against the defendants on the merits. As noted in the text, this court cannot resolve the merits of such a claim in the course of determining subject matter jurisdiction.

**4.** It ought to be clearly understood what this case is not about. It is not about standing to sue and it is not about representative plaintiffs nor assignments by plaintiffs. It is not about attempts to *create* federal subject matter jurisdiction. The line of cases which authorizes scrutiny of a limited number of situations involving *representative* plaintiffs and *partial assignments* by plaintiffs is not involved here. A statute, 28 USC § 1359, specifically prohibits district court jurisdiction in any case "in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court". In *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 89 S.Ct. 1487, 23 L.Ed.2d 9 (1969), the Supreme Court examined a situation where a plaintiff creditor attempting to *create* diversity jurisdiction, assigned its entire interest in a debt to a lawyer, who in turn agreed to reconvey ninety-five percent of any net recovery. The court examined the motives for the assignment and concluded that under § 1359, federal jurisdiction was prohibited. A number of lower federal courts have read *Caribbean Mills* as expanding the authority of federal district courts to

inquire into the status of parties plaintiff. See, e.g. *Miller v. Perry*, 456 F.2d 63 (4th Cir.1972) (disregarding the appointment of an administrator which destroyed diversity); *Picquet v. Amoco Production Co.*, 513 F.Supp. 938 (M.D.La1981) (transfer of an undivided one one hundred and eighth interest in land at issue to wholly owned non-diverse corporation formed for the purpose of defeating federal jurisdiction would not destroy diversity of citizenship jurisdiction); *Grassi v. Ciba–Geigy, Ltd.*, 894 F.2d 181 (5th Cir.1990) (assignment of two percent interest in claim to non-diverse plaintiff would not destroy federal diversity jurisdiction). Those cases do not involve examination of the merits of a plaintiff's claim. All involve situations where plaintiff has solicited a non-diverse representative or has assigned a small portion of the claim or property at issue with the motive of defeating federal diversity jurisdiction which was otherwise clearly present. The *Kramer* case involved an attempt by plaintiffs to *create* federal diversity jurisdiction. The other cases cited in this note involve situations where plaintiffs were involved in schemes to *defeat* federal diversity jurisdiction. The Supreme Court has not yet spoken as to whether the lower federal courts have correctly read the *Kramer* case as authorizing application of its principles to attempts by plaintiffs to *defeat* federal diversity jurisdiction. Assuming, however, that the lower court decisions cited in this note represent correct extensions of *Kramer*, they in no way support the proposition advanced by defendants in this case.

**150**

has not expressly provided for preemption in the area of railroad servitudes; nor has the Congress adopted legislation providing that railroads may grant such contracts without payment to landowners who are otherwise entitled to payment under state law, as plaintiffs claim in this action. Since the Congress has not indicated an express preemption, defendants have suggested that the court apply the doctrine of implied preemption as the court apparently did in *Mellon v. Southern Pacific Transport Co.*, 750 F.Supp. 226 (W.D.Tex.1990).

While the Congress has extensively provided for the regulation of railroads in certain areas, there is no indication that the Congress, in enacting 49 U.S.C. § 10749, sought to somehow impair state law property rights pertaining to servitudes. Moreover, the court cannot comprehend how the application of state property law in this area would interfere with the federal scheme of railroad safety and rate regulation.

This court is not at all convinced that the Congress intended to preempt private state law regulating the rights of owners of immovable property in Louisiana by federal statutes which regulate railroads. Such legislation, if enacted, would present serious Fifth Amendment problems regarding the taking of private property without just compensation and would constitute a radical departure from prior congressional measures. The commentators note that so far the Supreme Court has recognized the existence of complete preemption in only three instances, none of which remotely bears upon this case. See Wright, Miller, & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3522. This court will follow rather than lead the Supreme Court on that issue.

Finding neither diversity nor federal question jurisdiction,[5] the court hereby GRANTS plaintiffs' motion to remand and this case shall be remanded to the Eighteenth Judicial District Court for the Parish of West Baton Rouge, Louisiana.

5. It ought to be obvious that because federal subject matter jurisdiction is completely lacking

In view of the lack of subject matter jurisdiction, the court expresses no view upon the motion to dismiss.

there is nothing upon which to exercise supplemental jurisdiction under 28 U.S.C. § 1367.