**SPRINGTREE APARTMENTS, ALPIC**

v.

**LIVINGSTON PARISH COUNCIL, et al.**

No. Civ.A. 01–617–A.

United States District Court, M.D. Louisiana.

Sept. 21, 2001.

Alton Shelby Easterly, III, Easterly Law Office, Denham Springs, LA, for plaintiffs.

David Blayne Honeycutt, Fayard & Honeycutt, Denham Springs, LA, for defendants.

## RULING ON MOTIONS FOR PRELIMINARY INJUNCTION

JOHN V. PARKER, District Judge.

This matter is before the court on plaintiff Springtree Apartments's ("Springtree") Motion for Declaratory Judgment, Preliminary Injunction, and Permanent Injunction (doc. 2). The defendants have filed a counterclaim that includes a Motion for Preliminary Injunction (doc. 5) which was heard at the same time. All motions are opposed. The evidentiary hearing in this matter was held on August 22, 2001.

### FACTS

On August 17, 2001, the parties to this action filed a Stipulation of Fact (doc. 9). Although some of the stipulated "facts" are actually matters of law, the following matters are stipulated:

1.  Complainant, Springtree Apartments, ALPIC, (Springtree) is a Louisiana partnership *in commendam,* with its principal place of business in the Parish of Ouachita, State of Louisiana, appearing through its general partner, Marshall Development, Inc., a Louisiana corporation.

2.  Defendant, the Livingston Parish Council, is a body politic and corporate, with authority to sue and be sued and is the governing body of the Parish of Livingston, State of Louisiana.

3.  Individual defendants Randy Rushing, Robert Ringo, J.L. Schilling, Marshall Harris, Buddy Mincey, Dewey Harrell, Stan Cain, Ronald Sharp, and Rollie Bigner, are major residents of the Parish of Livingston, State of Louisiana, and are members of the Livingston Parish Council.

4. Springtree is the owner of a certain tract or parcel of land known as Tract "B–1" and "B–3" containing 5.86 acres, located in Section 43, Township 6 South, Range 3 East, Greensburg Land District, Parish of Livingston.

5. Pursuant to its plan for development and in compliance with Section 13–57(f) of the Livingston Parish Code, Springtree secured and submitted for approval by Defendant a drainage impact study reflecting, *inter alia*, Springtree's site plan, for its proposed multifamily apartment complex.

6. On the 13th Day of January, 2000, Defendant approved Springtree's drainage impact study including its site plan.

7. At the time of the approval of the drainage impact study, there were no other requirements by way of zoning, planning, land use or otherwise applicable to Springtree, or any other person, pursuant to the Livingston Parish Code.

8. On April 3, 2001, Springtree secured a building permit from the Defendant Parish for the construction of its multifamily apartment complex.

9. Springtree commenced construction on or about April 4, 2001 and continues its construction with completion anticipated to occur on or about October 1, 2001. As of this date, permanent concrete slabs have been poured, permanent walls and roofs constructed and completion on schedule is/ was anticipated to timely occur, subject, however, to events which are at issue herein.

10. On or about July 16, 2001, the Defendant Council Members voted to cause Springtree to show cause before the Defendant Council on July 26, 2001 why it should not cease and desist construction of its multifamily apartment complex.

11. Defendants' actions stem from citizen complaints from Springtree's neighbors who are opposed to Springtree's multifamily apartment complex, invoking, *inter alia,* the Defendant Council's ordinance, L.P. ordinance 00–17 (L.P.00–17), which was passed after·complainant secured approval of its drainage impact study, and which limits its application to "... new ... multifamily ... ·project[s] adjacent to ... property being used for residential purposes."

12. The citizens' complaints referenced above were raised in a meeting on June 20, 2001 called by Defendant, J.L. Schilling, including, *inter alia,* requests for a ten foot (10′) brick fence, off duty police as security guards, promises to conduct credit checks of proposed tenants, requests that no Class B or violent felons be permitted, and lease clauses that require eviction if there are repeated problems with the neighbors.

13. The provisions of L.P. 00–17 provide, in pertinent part:

(1) A minimum twenty five foot (25′) buffer zone shall be established and maintained between conflicting uses caused by the location of a new commercial, industrial, multifamily, religious, educational, institutional or public project adjacent to the property being used for residential purposes.

(2) The buffer zone shall be established and maintained by the owner of the property on which the new commercial, industrial, multifamily, religious, educational, institutional or public project is established.

(3) The buffer zone shall consist of·an eight foot (8′) high solid wood, brick

or masonry fence between the residential and commercial, industrial, multifamily, religious, educational, institutional or public property lines.

14. On July 26, 2001, the defendant council members resolved unanimously to seek a temporary restraining order against Springtree, stopping all work on Springtree's "apartment complex until issues regarding building setback lines are resolved to the satisfaction of all parties involved."

The court makes the following additional findings of fact:

15. Livingston Parish has a subdivision ordinance but no comprehensive zoning ordinance; the buffer zone or yard lines [1] established by the Livingston Parish Ordinance are the only parish regulations that might be considered as part of a zoning regulation.

16. Section 13–57(f) of the Livingston Subdivision Ordinance requires that: (f) All institutional, commercial and industrial developments (schools, hospitals, manufacturing plants, shopping centers, etc.) that will utilize over one (1) acre of land, are required to prepare, submit and have approved by the Livingston Parish council, a drainage impact study prior to construction of the facility.

17. Although Livingston Parish has had a building permit requirement, for at least some types of construction, since the 1980's, the testimony of the parish president was that, an applicant is authorized to proceed with construction upon approval of the drainage impact study. The court concludes that issuance of the building permit is *pro forma* or ministerial once the drainage impact study receives approval.

18. Plaintiff was authorized to proceed with construction of the apartment complex beginning the day after the parish council approved the drainage impact study on January 13, 2000.

19. At least one side of plaintiff's apartment project measures about seventeen (17) feet from the property line of adjacent property that is being used for residential purposes. That dimension could be scaled from the site plan submitted by plaintiff in connection with its drainage impact study, which was approved by the parish council on January 13, 2000.

20. Subsequent to approval by the Livingston Parish Council of plaintiff's drainage impact study and issuance of a building permit by Livingston Parish, and in reliance upon the drainage impact study and the building permit, plaintiff has expended sums in excess of several hundred thousand dollars in the construction of the apartment project.

21. Plaintiff's apartment project is being constructed under a federal low cost housing program under which qualified builders, such as plaintiff, receive subsidies in the form of valuable tax credits which are sold to help finance construction of such projects. Under the terms of approval of the tax credits, plaintiff will lose those tax credits if the project is not complete and ready for occupancy by December 31, 2001.

**1.** The only building line regulation that the court has found is Section 13–56 of the Subdivision Ordinance which establishes building lines of: set back, twenty-five (25) feet; rear yard, twenty (20) feet; and side lot line, five (5) feet. Neither side has suggested that this provision applies to a development of the type at issue here. Accordingly, the court does not consider that provision.

22. Any delay at this stage of construction will undermine plaintiff's ability to finish the project on time.

23. Plaintiff offered the expert testimony of a qualified real estate appraiser who was of the opinion that the Livingston Parish apartment rental market will not support rentals in the completed project in amounts sufficient to pay the costs of construction and operation of the complex, if the tax credits are lost.

24. It is apparent to this court that any delay in completing the project will result in loss of hundreds of thousands of dollars in tax credits and will likely cause the insolvency of the plaintiff.

## CONCLUSIONS OF LAW

### Jurisdiction

Plaintiff's complaint asserts claims arising under the Fifth and Fourteenth Amendments of the Constitution and under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff claims federal jurisdiction under 28 U.S.C. § 1331, § 1343(3) and (4), and § 2201. The court notes that 28 U.S.C. § 2201 under which plaintiff claims federal jurisdiction, confers no independent subject matter jurisdiction. That provision simply authorizes the district courts to render declaratory judgments in cases in which they already have subject matter jurisdiction.

Subject matter jurisdiction is normally determined on the basis of the plaintiff's complaint without inquiry into factual matters relating to the validity of those claims on the merits. *Green v. Ferrell*, 664 F.2d 1292 (5th Cir.1982); *State of Louisiana v. Sprint Comm. Co.*, 892 F.Supp. 145 (M.D.La.1995).

The court concludes, based upon the allegations of the complaint, that the court has federal question subject matter jurisdiction under 28 U.S.C. § 1331.

The complaint also asserts non-federal claims over which plaintiff asserts supplemental jurisdiction under 28 U.S.C. § 1367. That section authorizes the district courts to accept jurisdiction, "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III ..."

The non-federal claims are clearly part of the same case or controversy. Those claims are that, properly construed, the local ordinance does not apply to plaintiff's project and that, if the ordinance does so apply, then application to plaintiff will violate the Louisiana constitution, as well as federal law.

Since there clearly is federal question jurisdiction, the court will accept supplemental jurisdiction under 28 U.S.C. § 1367 over the remaining claims.

## CONTENTIONS OF THE PARTIES

The positions of the parties may be summarized as follows:

### Contentions of Plaintiff

Plaintiff, Springtree, first contends that the "buffer zone" ordinance does not apply to it. This argument is predicated upon the notion that the ordinance is unclear in application and that the term "new projects" does not include projects such as plaintiff's which had already received approval of a drainage impact study prior to adoption of the ordinance.

Next, plaintiff contends that if the ordinance does apply to it, the ordinance is unconstitutionally vague.

Plaintiff also suggests that the ordinance should not be retroactively applied to it and that doing so would violate federal and state constitutional prohibitions.

Plaintiff also contends that by virtue of approval by the Livingston Parish Council of the drainage impact study, plaintiff acquired the right to construct the apartment complex shown thereon and that application of the ordinance to it would deprive it of property rights secured to it by both state and federal constitutions.

Plaintiff also suggests that upon trial on the merits of this matter, it is prepared to prove "selective enforcement" of the ordinance by parish authorities and that application of the ordinance to plaintiff would amount to a denial to plaintiff of the equal protection of law.

**Contentions of Defendants**

The defendants contend that the ordinance is in no way vague, that, on the contrary, it is a lawful exercise of local police power which validly applies to the plaintiff's project.

Defendants argue that plaintiff acquired no rights under the drainage impact study because plaintiff did not secure a building permit until after the adoption of the ordinance.

Defendants argue that the plaintiff acquired no rights under the building permit issued by Livingston Parish authorities because that permit was issued by mistake and in error because it issued in violation of the ordinance in question.

Defendants argue that plaintiff's request for preliminary injunction should be denied and that a preliminary injunction should issue in their favor and against plaintiff requiring that plaintiff comply with the ordinance.

## DISCUSSION

The contentions of the parties set forth above involve a plethora of serious legal issues, including federal constitutional issues. As the Supreme Court pointed out in *County Court of Ulster County, N.Y.,*

442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1999):

" . . . Federal courts are courts of limited jurisdiction. They have the authority to adjudicate specific controversies between adverse litigants over which and over whom they have jurisdiction. In the exercise of that authority, they have a duty to decide constitutional questions when necessary to dispose of the litigation before them. But they have an equally strong duty to avoid constitutional issues that need not be resolved in order to determine the rights of the parties to the case under consideration. . . ." (citation omitted)

442 U.S. at 154, 99 S.Ct. at 2223.

Following the mandate of the Supreme Court, this district court first seeks a way to determine the rights of the parties without resolving constitutional questions. Plaintiff's first argument is that, correctly interpreted, Livingston Ordinance L.P. 00–17 does not apply to projects such as plaintiff's. If that argument prevails, then the constitutional issues need not be resolved at this phase of the litigation.

Accordingly, the court turns first to the ordinance itself.

Construing or interpreting the ordinance is a non-federal issue which falls within the supplemental jurisdiction of this federal district court. It is appropriate, therefore, that we apply state law to this issue.

As a civil law jurisdiction, Louisiana has enacted several civil code articles regarding interpretation of laws adopted by the legislature. Livingston Ordinance L.P. 00–17 is a legislative action, although enacted by a local governing body, rather than the state legislature. To the extent that the codal provisions are appropriately applied to legislative acts generally, then

the court will be guided by the applicable provisions of the Louisiana Civil Code.

Louisiana's first codal rule on interpretation of legislation is:

"When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." LSA–C.C. art. 9.

That is a well nigh universal maxim observed by all courts and it certainly should apply to the issues before this court.

The operative portion of L.P. 00–17 reads in pertinent part:

"(a) A minimum twenty-five foot (25') buffer zone shall be established between conflicting uses caused by the location of a new ... multi-family ... project adjacent to the [sic] property being used for residential purposes."

It is quite clear that from and after the effective date of this ordinance, all "new projects" must provide a twenty-five foot buffer zone. The question arises, however, what is a "new project"? The ordinance contains no definition of "project" and the court has been unable to find any definition in any other local legislation, such as the local subdivision ordinance.

The court concludes that the term "new project" is ambiguous because the parish council did not define it for us. Accordingly, we must interpret the ordinance.

The civil code also instructs that:

"The words of the law must be given their generally prevailing meaning . . . ." LSA – C.C. art. 11.

Counsel for defendants argues in brief that, "The 'project' phase of this apartment construction began when actual physical construction began on the premis-es ..." Post-trial brief of defendants, third unnumbered page.

Counsel for plaintiff points out that the ordinance does not say "new projects constructed after the date of this ordinance" or say "new construction projects". The ordinance simply says, "new projects", without further explanation.

Applying article 11 of the Civil Code, we find that the "generally prevailing meaning" of the word project is: "Specific plan or design; scheme ... 3. A planned undertaking". Webster's New Collegiate Dictionary, Merriam Co. (1981). Synonyms suggested for "project" are: "plan, blueprint, design, game plan, scheme, strategy". Webster's Collegiate Thesaurus, Merriam Co. (1976).

Neither the definition of "project" nor any synonym suggests actual construction work on the ground. Each of these words clearly suggests the undertakings or preparatory steps necessary before construction can begin.

One synonym, "blueprint", is an apt analogy. Before one can begin "actual physical construction," one must have a plan, blueprint, design or scheme in order that the improvements may be properly located and constructed upon the property.

The court concludes that the generally prevailing meaning of the word "project" is a plan, scheme, blueprint or design that is prepared before actual physical construction can begin.

█ In the case at bar, the plan, scheme, blueprint or design of plaintiff's apartment project began long before the actual physical construction work began. The "project" was complete when the drainage impact study that included a site plan showing the physical location of planned improvements to be constructed was submitted to and approved by the parish council on January 13, 2001, some

six months prior to the adoption of Livingston Parish Ordinance 00–17.

The court therefore concludes that on April 4, 2000, the date construction began, plaintiff's apartment project was not a "new project" within the meaning of the ordinance. It was certainly new construction but if the parish council had intended that the ordinance should apply to "all new construction", it should have said so.

To construe or interpret the ordinance as counsel for defendants suggests, that— "new projects", means, "new construction"—would utilize words not contained in the ordinance. Such a construction would also raise serious constitutional issues. The interpretation of the ordinance set forth by the court avoids grappling with those constitutional issues.

The Livingston Parish Council certainly could have adopted a "buffer zone" ordinance that applied to all "new construction", but it did not do so.

Article 10 of the Civil Code instructs that:

"When the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purposes of the law." LSA–C.C. art. 10.

The court takes judicial notice that, until the last couple of decades, Livingston Parish has always been a lightly populated, very rural place in Louisiana. The parish now has one of the fastest growing populations in Louisiana. Population growth presents urban growth problems. The obvious purpose of this ordinance then, is directed to the urbanization of Livingston Parish. Interpreting the ordinance so as to apply only to "new projects" that were not already approved by the Parish Council prior to adoption of the ordinance, conforms to the purpose of the law and sets forth a clear and certain rule that those

affected can understand and apply—if a project's drainage impact study had already been approved by the Parish Council prior to the adoption of Livingston Parish Ordinance 00–17, then the ordinance does not apply to that project.

Application of the ordinance to projects that had received approval of drainage impact studies prior to adoption of the ordinance would certainly constitute retroactive application. The ordinance clearly imposes a substantive new requirement that the plaintiff was not required to meet at the time it submitted its drainage impact study for approval. As noted above, the court has found as a fact that in Livingston Parish, approval of the drainage impact study is *de facto* approval of a project for construction. Mr. Fairburn, a licensed civil engineer and land surveyor, who has practiced his profession in that parish for many years, testified that upon approval of the drainage impact study, the project is "released to get the building permit".

Interpreting the ordinance as having retroactive application would be contrary to the dictates of Article 6 of the Civil Code, which declares that, "substantive laws apply prospectively." Article 6 also provides that procedural and interpretative laws apply both prospectively and retroactively, "unless there is a legislative expression to the contrary."

Even if this ordinance should be deemed "procedural", there is a legislative expression against retroactivity in the ordinance. The language of the ordinance itself applies only to "new" projects. That word indicates that the Parish Council intended only prospective application of the ordinance.

An interpretation of the ordinance applying it to projects which already had drainage study approval would also push

the court into resolving the constitutional issues, a course which is avoided by the court's interpretation, all of which reenforces the court in its interpretation of the ordinance.

### Requirements for Granting a Preliminary Injunction

Under Rule 65 Fed.Rules of Civ.P., a preliminary injunction may be granted only if the plaintiff establishes the following four elements:

(1) A substantial likelihood of success on the merits,

(2) A substantial threat that plaintiff will suffer irreparable injury if the injunction if denied,

(3) That the threatened injury outweighs any damage that the injunction might cause defendants, and

(4) That the injunction will not disserve the public interest.

*Sugar Busters, LLC v. Brennan*, 177 F.3d 258 (5th Cir.1999).

Plaintiff has demonstrated to the satisfaction of the court that it is likely to prevail upon the merits.

As to the requirement of irreparable injury, that issue is more in doubt. Plaintiff suggests that the loss of its "valuable tax credits valued at hundreds of thousands of dollars", that, "once gone cannot be replaced," coupled with its almost certain insolvency if injunctive relief is denied, amount to irreparable injury. Plaintiff's suggestion that economic injury on such a vast scale can be considered irreparable is interesting but the court concludes that it is unnecessary to consider that issue.

The court has concluded that the ordinance does not apply to "old" projects such as that of plaintiff's. To allow defendants to force plaintiff to comply with the ordinance before trial on the merits would clearly deprive plaintiff of its constitutional right under the Fifth Amendment to own and develop its property. It is clear that in the absence of judicial restraint, the defendants have every intention of forcing plaintiff to comply with the ordinance without regard to the damage that might be caused to the plaintiff.

■ It has been repeatedly recognized by the federal courts that violation of constitutional rights constitutes irreparable injury as a matter of law. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) and authorities therein cited.

The certain injury to the plaintiff that would be the result of enforcing the ordinance against it clearly outweighs any damage that the injunction might cause the defendants prior to trial on the merits. The injunction in this case clearly will not disserve the public interest, it will promote the public interest.

Rule 65(c) requires that when a preliminary injunction issues, security be provided for "the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongly enjoined". The amount of security is left to the discretion of the trial judge. In this case, the Parish of Livingston will suffer little or no damage in the event that plaintiff is not successful at trial on the merits. Security is set, therefore, at $1,000.

All additional issues are reserved for trial on the merits of the action.

For the foregoing reasons, the motion for preliminary injunction on behalf of plaintiff (doc. 2) is GRANTED and upon plaintiff posting $1,000 as security, the Parish of Livingston shall be preliminarily enjoined from enforcing Livingston Parish Ordinance 00–17 against the plaintiff's project pending trial on the merits. Correspondingly, the motion for preliminary in-

junction on behalf of defendants (doc. 5) is hereby DENIED.