PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

STATE OF WEST VIRGINIA ex rel.
DARRELL V. MCGRAW, JR.,
Attorney General,

*Plaintiff-Appellee,*

v.

CVS PHARMACY, INCORPORATED, a
Rhode Island Corporation; KMART
HOLDING CORPORATION, a Delaware
Corporation; THE KROGER
COMPANY, an Ohio Corporation;
WAL-MART STORES, INCORPORATED,
a Delaware Corporation;
WALGREEN COMPANY, an Illinois
Corporation; TARGET STORES
INCORPORATED, a Minnesota
Corporation,

*Defendants-Appellants.*

No. 11-1251

Appeal from the United States District Court
for the Southern District of West Virginia, at Charleston.
John T. Copenhaver, Jr., District Judge.
(2:09-cv-01000)

Argued: March 22, 2011

Decided: May 20, 2011

Before NIEMEYER and DAVIS, Circuit Judges, and
Ronald Lee GILMAN, Senior Circuit Judge of the United
States Court of Appeals for the Sixth Circuit,
sitting by designation.

Affirmed by published opinion. Judge Niemeyer wrote the majority opinion, in which Judge Davis joined. Senior Judge Gilman wrote a dissenting opinion.

---

## COUNSEL

**ARGUED:** David B. Goroff, FOLEY & LARDNER, LLP, Chicago, Illinois, for Appellants. John William Barrett, BAILEY & GLASSER, LLP, Charleston, West Virginia, for Appellee. **ON BRIEF:** Pamela C. Deem, Bryant J. Spann, ALLEN GUTHRIE & THOMAS PLLC, Charleston, West Virginia, Robert H. Griffith, Jonathan W. Garlough, FOLEY & LARDNER, LLP, Chicago, Illinois, for CVS Pharmacy, Incorporated; Alexander Macia, SPILMAN, THOMAS AND BATTLE PLLC, Charleston, West Virginia, Tina M. Tabacchi, Brian J. Murray, Dennis Murashko, JONES DAY, Chicago, Illinois, for Wal-Mart Stores, Incorporated; Thomas R. Goodwin, Susan C. Wittemeier, Johnny M. Knisely II, GOODWIN & GOODWIN, LLP, Charleston, West Virginia, Jill M. Wheaton, Todd G. Gattoni, DYKEMA PLLC, Ann Arbor, Michigan, for Kmart Holding Corporation; W. Henry Jernigan, Jr., Ramonda Lyons, DINSMORE & SHOHL LLP, Charleston, West Virginia, for Walgreen Company and The Kroger Company; David Allen Barnette, JACKSON KELLY PLLC, Charleston, West Virginia, Wendy Wildung, Craig S. Coleman, FAEGRE & BENSON LLP, Minneapolis, Minnesota, for Target Stores Incorporated. Brian A. Glasser, BAILEY & GLASSER, LLP, Charleston, West Virginia, Joshua I. Barrett, Sean P. McGinley, DITRAPANO, BARRETT & DIPIERO, PLLC, Charleston, West Virginia, Frances A. Hughes, Chief Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Charleston, West Virginia, for Appellee.

---

**OPINION**

NIEMEYER, Circuit Judge:

The State of West Virginia, by its Attorney General, commenced this action in state court against CVS Pharmacy, Inc., and five other pharmacies (collectively, the "Pharmacies"), alleging that the Pharmacies sold generic drugs to West Virginia consumers without passing along to the consumers the cost savings of generic drugs over brand name equivalents, in violation of West Virginia Code § 30-5-12b(g), regulating the practice of pharmacy, and the West Virginia Consumer Credit Protection Act, prohibiting "unfair or deceptive acts or practices in the conduct of any trade or commerce," West Virginia Code § 46A-6-104, and "excess charges," *id.* § 46A-7-111. The State, claiming to act in its "sovereign and quasi-sovereign capacity," seeks injunctive relief, restitution and disgorgement of "overcharges," recovery on behalf of the consumers of "excess charges," civil penalties, interest, costs, and attorneys' fees.

The Pharmacies removed the action from state court to the district court under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), arguing that the action is a "disguised class action" and therefore was subject to removal under CAFA.

On the State's motion, the district court ordered that the action be remanded to state court, holding that the action was not a "class action" under CAFA, but rather a "classic *parens patriae* action" intended to vindicate the State's quasi-sovereign interests and the individual interests of its citizens.

We affirm, concluding that this action is not a "class action" as defined by CAFA. CAFA authorizes the removal of specified civil actions that are brought under Federal Rule of Civil Procedure 23 or a "*similar* State statute or rule of judicial procedure authorizing an action to be brought by 1 or

more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). This action was not brought under Federal Rule of Civil Procedure 23, nor under West Virginia's corresponding rule, West Virginia Rule of Civil Procedure 23. Rather, it was brought under a West Virginia statute regulating the practice of pharmacy and the West Virginia Consumer Credit Protection Act, neither of which includes provisions providing for a typical class action, such as provisions addressing the adequacy of representation, numerosity, commonality, and typicality requirements. Because this action was brought by the State under state statutes that are not "similar" to Federal Rule of Civil Procedure 23, we conclude that it is not removable under CAFA as a class action.

I

Attorney General Darrell McGraw commenced this action in the Circuit Court of Boone County, West Virginia, naming as defendants CVS Pharmacy, Inc., Kmart Holding Corporation, the Kroger Company, Wal-Mart Stores Inc., Walgreen Co., and Target Stores, Inc., and alleging that in filling drug prescriptions, these Pharmacies overcharged West Virginia citizens, in violation of two laws, West Virginia Code § 30-5-12b (the "Pharmacy Act") and West Virginia Code §§ 46A-6-104 and 46A-7-111 (the West Virginia Consumer Credit Protection Act or "WVCCPA"), and thereby obtained unjust profits.

The Pharmacy Act requires pharmacists to fill prescriptions with generic drugs, when appropriate, and to pass on to the consumer the savings in the cost of the generic drugs. Thus, when a pharmacy acquires a brand name drug at $30 and a generic equivalent at $10, the pharmacy must pass on at least the $20 difference to the consumer. *See* W. Va. Code § 30-5-12b(g). But it must also pass on any other savings, such as the savings represented by the difference in the retail prices. *See id.* The Attorney General contends that violations of the Phar-

macy Act also constitute violations of the WVCCPA, which prohibits "unfair or deceptive" trade practices and the collection of "excess charges." *See* W. Va. Code §§ 46A-6-104, 46A-7-111.

As authorized by these Acts, the West Virginia Attorney General is, in this action, seeking a temporary and permanent injunction against further violations of the Acts; "[e]quitable relief, including but not limited to restitution and disgorgement of monies obtained as a result of the overcharges"; repayment of the "excess charges" to affected consumers; civil penalties of up to $5,000 for each willful violation of the WVCCPA; pre-judgment and post-judgment interest; and costs including legal fees. The State alleges that it is pursuing these remedies "in its sovereign and quasi-sovereign capacity."

The Pharmacies removed the action to federal court, relying on several distinct grounds for doing so, including CAFA. To justify removal under CAFA, the Pharmacies asserted that because the "complaint [was] a disguised class action" designed "to recover funds on behalf of those consumers who have allegedly paid overcharges," it was a removable class action. In particular, they pointed to Count III, which is dedicated to the remedy of collecting, on behalf of consumers, excess charges under West Virginia Code § 46A-7-111(1). That section provides that if "an excess charge has been made, the court shall order the [defendant] to refund to the consumer the amount of the excess charge." *Id.* Noting the large number of consumers in West Virginia and prescriptions filled for them, the Pharmacies argued that Count III met CAFA's numerosity and amount-in-controversy requirements. Because the Pharmacies are not West Virginia citizens, they also argued that minimal diversity was satisfied. Finally, because the Attorney General was seeking refunds *on behalf of* each affected West Virginia purchaser of generic drugs, the Pharmacies contended that the action was a representational proceeding, qualifying as a "class action" under CAFA.

The district court granted the State's motion to remand, rejecting each of the various grounds relied on for removal. With respect to the CAFA ground, which is the only issue on appeal, the court concluded that this action was "a classic *parens patriae* action that is neither a class action nor a mass action contemplated by CAFA." *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, No. 2:09-1000, 2010 U.S. Dist. LEXIS 101127, at *50 (S.D. W. Va. Sept. 21, 2010). In concluding that this action was a *parens patriae* action, the district court noted that the WVCCPA authorized the Attorney General to act "as an administrator of the law," independently of individual consumer complaints. *Id.* at *36-37 (quoting *Manchin v. Browning*, 296 S.E.2d 909, 919 (W. Va. 1982)); *see also id.* at *42 (observing that the Attorney General is charged with "a freestanding consumer-protection duty"). The district court also noted that the State's action was "imbued with a 'disgorgement' purpose," "separate and apart from the interests of particular consumers in obtaining recompense." *Id.* at *38-39. In this sense, the court explained, "the Attorney General's paramount goal [was] to extract from the alleged wrongdoers every penny associated with the excess charges, along with civil penalties flowing to the State alone," thereby "warning . . . future violators that they [would] not long profit from consumer fraud." *Id.* at *39-40.

The Pharmacies sought permission to appeal the CAFA portion of the district court's order, relying on 28 U.S.C. § 1453(c)(1), and we granted their motion by order dated March 24, 2010.

## II

In arguing that the district court erred in concluding that this action was not removable as a class action under CAFA, the Pharmacies acknowledge that the Attorney General did not purport to bring his action as a class action but rather relied on his authority under the Pharmacy Act and the WVCCPA. But the Pharmacies argue:

> It is well-settled that "in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach."
>
> * * *
>
> Thus, the AG may not plead around federal jurisdiction merely by labeling his claims as brought in the state's sovereign or quasi-sovereign capacity.
>
> * * *
>
> Instead, this Court must consider whether, in substance, the Amended Complaint satisfies CAFA's requirements for a "class action." That analysis makes clear this case is properly removed as a CAFA class action, and that the district court erred by remanding it.

(Quoting *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008)). After asserting that the requirements for minimal diversity, the jurisdictional amount, and numerosity were in fact satisfied, the Pharmacies assert, as they must, that the state statutes on which the Attorney General relied were "similar" to Federal Rule of Civil Procedure 23. They explain that the statutes are "similar" because, in particular, the WVCCPA allows the Attorney General "to represent in a single action thousands of consumers who all suffer a similar injury—excess charges." "That similarity alone," they argue, is enough to satisfy federal removal jurisdiction.

To determine whether the Pharmacies' position is sustainable requires a straightforward statutory analysis of CAFA.

CAFA authorizes the removal of any civil action which is a class action in which (1) "the matter in controversy exceeds

the sum or value of $5,000,000, exclusive of interest and costs," 28 U.S.C. § 1332(d)(2); (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," *id.* § 1332(d)(2)(A); and (3) there are 100 or more plaintiff class members, *id.* § 1332(d)(5)(B). And it defines "class action" to mean "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or *similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action.*" *Id.* § 1332(d)(1)(B) (emphasis added).

Inasmuch as West Virginia's action was commenced in state court, it was obviously not commenced under Federal Rule of Civil Procedure 23. Thus, it would be removable only if it were filed under a "*similar* State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B) (emphasis added).

A state statute or rule is "similar" to Federal Rule of Civil Procedure 23 if it closely resembles Rule 23 or is like Rule 23 in substance or in essentials. *See Merriam-Webster's Collegiate Dictionary*, 1161 (11th ed. 2007). Moreover, as CAFA requires, the state statute or rule must resemble or be like Rule 23 by "authorizing an action to be brought by 1 or more representative persons *as a class action.*" 28 U.S.C. § 1332(d)(1)(B) (emphasis added). While the statutory definition is, to some degree, circular, Congress undoubtedly intended to define "class action" in terms of its similarity and close resemblance to Rule 23.

At its essence, Rule 23 provides that "one or more members of a class may sue or be sued as representative parties on behalf of all members *only* if" the criteria for numerosity, commonality, typicality, and adequacy of representation are satisfied. Fed. R. Civ. P. 23(a) (emphasis added). Without this representative nature of the plaintiffs' action and the action's satisfaction of the four criteria stated in Rule 23(a), the action

is not a class action. It is not fortuitous that CAFA parroted Rule 23 language when it required that a "similar" state statute or rule "authoriz[e] an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). Thus, while a "similar" state statute or rule need not contain all of the other conditions and administrative aspects of Rule 23, it must, at a minimum, provide a procedure by which a member of a class whose claim is typical of all members of the class can bring an action not only on his own behalf but also on behalf of all others in the class, such that it would not be unfair to bind all class members to the judgment entered for or against the representative party.[1] West Virginia Civil Rule of Procedure 23 would satisfy the "similarity" requirement, but it was not invoked here.

Instead, the Attorney General filed a statutorily authorized action on the State's behalf, asserting claims arising exclusively under state consumer protection statutes. Count I alleges that the Pharmacies violated state law regulating the practice of pharmacy in West Virginia, particularly West Virginia Code, § 30-5-12b(g). Counts II and III allege that the Pharmacies violated portions of the WVCCPA, a wide-ranging statute designed "to protect consumers from unfair, illegal, and deceptive acts or practices," as prescribed in West Virginia Code, § 46A-6-101 *et seq. West Virginia ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc.*, 461 S.E.2d 516,

---

[1]The dissent contends that for CAFA purposes, an action is "similar" to a class action when it is brought under a procedure which "authorizes a single person or a small group of people to represent the interests of a larger group." *Post*, at 17 (quoting *Black's Law Dictionary* 284 (9th ed. 2009)). Although this definition captures an important aspect of class actions, it is also incomplete. All class actions are representative in nature; but not all representative actions are necessarily class actions. *See*, *e.g.*, *General Telephone Co. v. EEOC*, 446 U.S. 318, 333-34 (1980); *In re Edmond*, 934 F.2d 1304, 1313 (4th Cir. 1991). In this regard, Rule 23's requirement that the representative party be a member of the class whose claim is typical of the class members' claims differentiates the representative nature of class actions from the larger body of representative actions.

523 (W. Va. 1995). For its enforcement the WVCCPA grants the Attorney General "broad powers to supervise, investigate and prosecute violations." *Id.* at 525 (quoting *Harless v. First National Bank*, 246 S.E.2d 270, 276 (W. Va. 1978)). Although the Attorney General may "[r]eceive and act on complaints," the WVCCPA also empowers him to "commence proceedings on his own initiative." W. Va. Code § 46A-7-102(1)(a).

Section 46A-7-111, on which Count III is based, authorizes the Attorney General to pursue refunds on behalf of consumers affected by "excess charges" and to seek civil penalties where the excess charges were repeatedly and willfully collected by a defendant. W. Va. Code § 46A-7-111(1)-(2). Here, the Attorney General has exercised both of these powers, as this action seeks repayment to consumers under § 46A-7-111(1) and penalties inuring to the State of "up to $5,000 for each repeated and willful violation" under § 46A-7-111(2).

These West Virginia statutes, on which the Attorney General relies for his claims, contain virtually none of the essential requirements for a Rule 23 class action. To begin with, the Attorney General is not designated as a member of the class whose claim would be typical of the claims of class members. Rather, he is authorized to file suit independently of any consumer complaints, as a *parens patriae*, that is, as the legal representative of the State to vindicate the State's sovereign and quasi-sovereign interests, as well as the individual interests of the State's citizens. Indeed, the fact that the Attorney General is acting to obtain disgorgement of ill-gotten gains, "separate and apart from the interests of particular consumers in obtaining recompense," *CVS Pharmacy, Inc.*, 2010 U.S. Dist. LEXIS 101127, at *38-39, validates this action as a *parens patriae* action. *See In re Edmond*, 934 F.2d 1304, 1310 (4th Cir. 1991).[2]

---

[2] The dissent suggests that the Attorney General "does not have a quasi-sovereign interest" in Count III because the reimbursement sought under

Moreover, neither the Pharmacy Act nor the WVCCPA contains any numerosity, commonality, or typicality requirements, all of which are essential to a class action.

Finally, these Acts authorize the Attorney General to proceed without providing notice to overcharged consumers, which would also be essential in a Rule 23 class action seeking monetary damages. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

The Pharmacies argue that the suit is nonetheless a "disguised class action" because Count III is a representative action in which the Attorney General acts on behalf of the citizens, each of whom allegedly suffered a common injury. *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008); *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441 (E.D. Pa. 2010). But that type of representation is not the type that would make the State's action a class action. A class action is an action filed by an individual *as a member of a class* and whose claim is typical of the class members' claims. Thus, for a representative suit to be a class action, the representative party "must be part of the class and 'possess the same interest and suffer the same

---

West Virginia Code § 46A-7-111(1) would flow directly to an identifiable group of consumers, rather than to the State or its citizens generally. *Post*, at 21. From this, the dissent concludes that Count III does not state a valid *parens patriae* claim and that the action as a whole must be classified as a class action. *Id.* at 20-23.

While the *parens patriae* analysis set forth in *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982), and relied upon in *Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 425-28 (5th Cir. 2008), is helpful in some respects, it is not a substitute for the similarity standard set forth in CAFA. We are presented here not with the question of whether the instant action is either a *parens patriae* action or a CAFA class action, but simply whether it is a CAFA class action. And, while we conclude that this action is a *parens patriae* action, based on the State's deterrence and consumer protection interests, that conclusion is not essential to the separate, and more meaningful determination that the action in this case was not brought under a procedure "similar" to Rule 23.

injury' as the class members." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)); *see Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 338 (4th Cir. 1998). The Attorney General's claim on behalf of the State, however, does not require the State to be a member of the class, to suffer the same injury as class members, or to have a claim typical of each class member's claim. Rather, in representing the citizens, the State acts more in the capacity of trustee representing beneficiaries or a lawyer representing clients, neither of which is the type of representation essential to the representational aspect of a class action.

Indeed, the West Virginia Attorney General's role here is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public. Yet, the Supreme Court has concluded that such a regulator's action is not a class action of the kind defined in Rule 23. For example, in *General Telephone Co. v. EEOC*, 446 U.S. 318, 334 & n.16 (1980), the Supreme Court held that a sex-discrimination suit brought by the EEOC under Title VII was "not properly characterized as a 'class action' subject to the procedural requirements of Rule 23." The Court reached that conclusion despite the fact that the suit sought back pay and other relief on behalf of all of the employer's adversely affected employees in California, Idaho, Montana, and Oregon. *Id.* at 321, 324. Likewise, in *Edmond*, we held that a bankruptcy claim brought by the Maryland Attorney General's Office "on behalf of itself and all [affected Maryland] consumers" did not need to comply with Rule 23, even though one of the claim's primary purposes was to provide individual citizens with refunds pursuant Maryland's Consumer Protection Act. *See* 934 F.2d at 1306; *see also id.* at 1310-13.

Much like the statutes at issue in *General Telephone* and *Edmond*, the WVCCPA authorizes the Attorney General to bring enforcement actions against violators and, in so doing,

to pursue relief on behalf of aggrieved individuals. *See Scott Runyan*, 461 S.E.2d at 523-24. Yet that type of representation by the State is no more characteristic of the representational nature of a class action than were the claims in *General Telephone* and *Edmond*. Neither the State nor the Attorney General is a member of the class purportedly represented, and neither suffered the same injury as the citizens in that class.

The Pharmacies nonetheless argue that CAFA's legislative history supports their position. In particular, they point to Senate Report 109-14, which outlines the Senate Judiciary Committee's views, and several floor statements made during debate on the Act. Senate Report 109-14, however, was issued 10 days *after* CAFA was signed into law, and for that reason alone, it is a questionable source of congressional intent. *See Coll. of Dental Surgeons v. Conn. Gen. Life Ins. Co.*, 585 F.3d 33, 38 n.2 (1st Cir. 2009); *see also Weinberger v. Rossi*, 456 U.S. 25, 35 (1982) ("*[P]ost hoc* statements of a congressional Committee are not entitled to much weight"). Moreover, while some floor statements cited by the Pharmacies are favorable to their arguments, others cited by the Attorney General, from the same Senator and the same page of the *Congressional Record*, point in the opposite direction. *Compare* 151 Cong. Rec. S1163 (daily ed. Feb. 9, 2005) (statement of Sen. Charles Grassley that a subsequently defeated amendment intended to exempt suits brought by state attorneys general would have "create[d] a very serious loophole"), *with id.* (statement of Sen. Charles Grassley that "the amendment [was] not necessary" because "cases brought by State attorneys general will not be affected by this bill"). This legislative history is hardly probative.

In sum, we conclude that because the action before us was not brought under Federal Rule of Civil Procedure 23 or a "similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action," 28 U.S.C. § 1332(d)(1)(B), the district court

did not err in remanding this case to the Circuit Court for Boone County.

## III

The West Virginia Attorney General initially filed this action in a West Virginia state court to enforce, on behalf of West Virginia and its citizens, state consumer protection laws applicable only in West Virginia. Were we now to mandate that the State was not entitled to pursue its action in its own courts, we would risk trampling on the sovereign dignity of the State and inappropriately transforming what is essentially a West Virginia matter into a federal case. The Pharmacies nonetheless rationalize such a transformation on the basis that the Attorney General somehow mispleaded his case, disguising what would otherwise be a CAFA class action.

The Pharmacies' approach, however, would have to ignore the Attorney General's stated basis for his action of seeking to vindicate West Virginia's interests in how pharmacies may charge West Virginia consumers in filling prescriptions. If we accept the Attorney General's good faith in pleading his claims—and we are given no reason not to—the Pharmacies have no basis, real or postured, to assert that this is an "interstate case of national importance," the defining federal interest animating CAFA's removal provisions. *See* CAFA, Pub. L. No. 109-2 § 2(b)(2).

To be sure, CAFA does protect important federal interests in addressing state abuses in interstate class actions. It was enacted to prevent States from keeping "cases of national importance out of Federal court" and making "judgments that impose their view of the law on other States and bind the rights of the residents of those states." *Id.* § 2(a)(4). It thus assures that federal courts decide "interstate cases of national importance." *Id.* § 2(d)(2). But CAFA is also sensitive to deeply-rooted principles of federalism, reserving to the States primarily local matters. *See Johnson v. Advance Am. Cash*

*Advance Centers of S.C., Inc.*, 549 F.3d 932, 938 (4th Cir. 2008); *see also* 28 U.S.C. § 1332(d)(3)-(5).

In this case, where West Virginia has raised no federal question and where all persons on whose behalf West Virginia has filed this action are West Virginia citizens, the "claim of sovereign protection from removal [arises] in its most powerful form." *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 706 (5th Cir. 2008). Such sovereign protection derives from our constitutional structure and serves the important function of preserving the "dignity" to which states are entitled "as residuary sovereigns and joint participants in the governance of the Nation." *Alden v. Maine*, 527 U.S. 706, 713-14, 748-49 (1999); *see also Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 268 (1997). It does so by preventing States from being involuntarily "dragged" into any court—a prerogative of sovereigns well established at the time of the founding. *See Alden*, 527 U.S. at 715-18.

While it is true that West Virginia voluntarily entered into its own courts to enforce its laws, it did not voluntarily consent to removal of its case to a federal court, and a federal court should be most reluctant to compel such removal, reserving its constitutional supremacy only for when removal serves an overriding federal interest. *See Tennessee v. Davis*, 100 U.S. 257, 266-67 (1880). It is telling that "[n]one of the cases or founding history speak directly to" the question of "whether a state as a plaintiff suing defendants over whom it has regulatory authority in state court under its own *state laws* may be removed to federal court," except when the state raises a federal question. *Katrina Breaches*, 524 F.3d at 711. Comity demands that we step most carefully before "snatch[-ing] cases which a State has brought from the courts of that State, unless some clear rule demands it." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 21 n.22 (1983).

We conclude, in the circumstances presented here, that CAFA does not clearly demand that West Virginia's action,

which is essentially a *parens patriae* type of action for enforcement of its own laws on behalf of itself and its citizens, be removed to federal court, even though the Pharmacies are citizens of States different from West Virginia. The Pharmacies are summoned to West Virginia courts only because they do business in West Virginia and, while there, allegedly violated its laws.

We emphasize, however, that even as our interpretation of CAFA recognizes West Virginia's important sovereign interests, it should not be taken as an interpretation that lessens CAFA's scope and important federal purposes. We simply conclude that removal of this action does not serve those federal interests as articulated in CAFA.

Accordingly, the district court's order remanding this matter to the Circuit Court for Boone County is

*AFFIRMED*.

GILMAN, Senior Circuit Judge, dissenting:

The majority has concluded that the Class Action Fairness Act (CAFA) does not provide federal jurisdiction over the West Virginia Attorney General's lawsuit because this case is a *parens patriae* action and not a "class action" as defined by CAFA. For the reasons set forth below, I respectfully disagree.

The primary difficulty in this case, as I see it, is that CAFA does not actually define a class action. As the majority notes, CAFA's definition of a class action is essentially circular: "the term 'class action' means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B). And CAFA gives no guidance as to what type of state statute or rule of judicial

procedure should be considered "similar" for purposes of conferring federal jurisdiction.

In my view, the essence of a class action is set forth in the first sentence of the term's definition in Black's Law Dictionary: "A lawsuit in which the court authorizes a single person or a small group of people to represent the interests of a larger group . . . ." Black's Law Dictionary 284 (9th ed. 2009). I believe that the present suit brought by the Attorney General squarely fits within that authoritative definition of a class action.

True enough, as the majority points out, the Attorney General's suit was not brought under Rule 23 of the West Virginia Rules of Civil Procedure. This means that the elements of numerosity, commonality, typicality, and adequacy of representation have not been specifically pleaded. But I submit that these are subsidiary factors that do not detract from the essence of the action. They are, in other words, "bells and whistles" whose absence in the pleadings do not prevent the Attorney General's suit from being considered a class action under CAFA.

To decide whether CAFA grants federal jurisdiction over the Attorney General's lawsuit, therefore, one must determine the essence of the action. *See Louisiana ex. rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 424 (5th Cir. 2008) ("It is well-established that in determining whether there is jurisdiction, federal courts look to the substance of the action and not only at the labels that the parties may attach."). I believe that the answer to this inquiry ultimately turns on who the real party in interest is in this case. If West Virginia is the real party in interest, then this is a proper *parens patriae* action over which the federal courts lack jurisdiction. *See Postal Tel. Cable Co. v. Alabama*, 155 U.S. 482, 487 (1894) ("A state is not a citizen. And under the judiciary acts of the United States it is well settled that a suit between a state and a citizen or a corporation of another state is not between citizens of differ-

ent states, and that the circuit court of the United States has no jurisdiction of it, unless it arises under the constitution, laws, or treaties of the United States."). On the other hand, if the real parties in interest are the allegedly overcharged West Virginia consumers, and the state is only a nominal party, then I believe that we have jurisdiction under CAFA.

The Attorney General brings this suit in what he alleges is West Virginia's *parens patriae* capacity. "In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties," also known as a "quasi-sovereign interest." *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982). The Supreme Court has stated that there are two general categories of quasi-sovereign interests: (1) a state's interest in the physical and economic well-being of its citizens in general, and (2) a state's interest in "not being discriminatorily denied its rightful status within the federal system." *Id.*

*Snapp* provides an example of a valid quasi-sovereign interest. In that case, the Attorney General of Puerto Rico alleged that certain east-coast apple growers were violating federal labor and immigration laws by discriminating against Puerto Ricans in favor of foreign laborers. The Supreme Court concluded that Puerto Rico has a "substantial interest in assuring its residents that it will act to protect them" from discrimination. *Id.* at 609. Alternatively, the Court concluded that Puerto Rico had *parens patriae* standing to "pursue the interests of its residents in the Commonwealth's full and equal participation in the federal employment service scheme." *Id.*

Other examples of successful *parens patriae* actions include cases where a state has sought to enjoin a public nuisance or ensure the economic well-being of its citizenry generally. *See, e.g., Missouri v. Illinois*, 180 U.S. 208, 248 (1901) (holding that Missouri could pursue an injunction to prevent the defendants from discharging sewage in such a way that

polluted the Mississippi River in Missouri); *Pennsylvania v. West Virginia*, 262 U.S. 553, 592 (1923) (recognizing Pennsylvania and Ohio as the proper parties to represent the interests of their citizens in maintaining access to natural gas produced in West Virginia); *Georgia v. Pennsylvania R. Co.*, 324 U.S. 439, 450 (1945) (holding that Georgia had an interest apart from that of its citizens where numerous railroads had conspired to fix freight rates in a manner that discriminated against Georgia shippers in violation of federal antitrust laws). "In sum, if a state can demonstrate that, in bringing an action, it seeks only to protect the well-being of its residents in general, it has expressed a quasi-sovereign interest in the entire action." *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 446 (E.D. Pa. 2010).

The "analytical framework in which a court examines a state's claims for relief has a powerful impact on the court's ultimate conclusion as to whether the state has a quasi-sovereign interest in all the relief it seeks." *Id.* at 447. Like the Fifth Circuit in *Caldwell*, and the Eastern District of Pennsylvania in *Comcast*, I would adopt a claim-by-claim approach to determine if West Virginia has a sufficient quasi-sovereign interest such that it is acting within its *parens patriae* authority. This framework best aligns with CAFA's expansion of federal jurisdiction over class actions. *See Comcast*, F. Supp. 2d at 449 ("The claim-by-claim approach does a better job of unearthing a state's real interest in a suit because, unlike the wholesale approach, it does not blur the lines between those claims for which a state has a well-recognized interest, and those claims for which a state's interest is negligible.").

In *Caldwell*, the Louisiana Attorney General filed a state-court lawsuit styled as a *parens patriae* action against several insurance companies and other defendants. The suit sought forfeiture of illegal profits, treble damages, and injunctive relief due to the defendants allegedly agreeing to undervalue and underpay certain insurance claims of Louisiana citizens, in violation of Louisiana's antitrust laws. *See Louisiana ex.*

*rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 422-23 (5th Cir. 2008). Upon review, the Fifth Circuit concluded that the Attorney General was only a nominal party in interest for purposes of the treble-damages claim in light of the fact that the state was seeking to recover those damages on behalf of individual policyholders. In reaching this conclusion, the Fifth Circuit stated that it was mindful that Louisiana was also seeking injunctive relief, a remedy clearly sought on behalf of the state. *Id.* at 430. But the court ultimately concluded that despite the request for injunctive relief, the individual policyholders were the real parties in interest and, because the requirements of a "mass action" were met, the action was properly removed under CAFA. *Id.*

Similarly, in *Comcast*, the United States District Court for the Eastern District of Pennsylvania found that the Attorney General was not acting within West Virginia's *parens patriae* authority where he sought relief for a "discrete group of Comcast's premium subscribers." *Comcast*, 705 F. Supp. 2d at 450. In that case, the district court concluded that West Virginia did not have a quasi-sovereign interest in the antitrust treble and compensatory-damages claims. The court further held that the West Virginia Antitrust Act was sufficiently similar to Rule 23 of the Federal Rules of Civil Procedure to meet CAFA's requirements, thereby conferring federal jurisdiction over the case. *Id.* at 454.

Here, the Attorney General asserts that the defendants (the Pharmacies) violated West Virginia's Pharmacy Act and the WVCCPA, and he seeks damages payable directly to the allegedly aggrieved West Virginia purchasers of generic drugs under WVCCPA § 46A-7-111(1), civil penalties under WVCCPA § 46A-7-111(2), injunctive relief, and other appropriate remedies. Utilizing a claim-by-claim framework, I believe that the primary thrust of this case is the excess-charges claim (Count III) for which the Attorney General seeks reimbursement payable directly to the affected consumers under WVCCPA § 46A-7-111(1).

I reach this conclusion for two reasons: (1) the WVCCPA provides that a ruling that the consumers have been over-charged *will* result in those overcharges being remitted directly to the consumers, and (2) injunctive relief and any civil penalties are *discretionary* with the court and require more stringent proof on the part of the Attorney General. *Compare* West Va. Code § 46A-7-111(2) (requiring proof of repeated and willful violations of the WVCCPA before civil penalties may be awarded) *with* West Va. Code § 46A-7-111(1) (allowing the Attorney General to bring an action against a creditor for charging consumers in excess of what the law permits, regardless of the creditor's state of mind).

Just as the Louisiana Attorney General did not have a quasi-sovereign interest in the treble-damages relief he sought on behalf of individual policyholders in *Caldwell*, the West Virginia Attorney General here does not have a quasi-sovereign interest in the refunds that the Pharmacies will be required to pay directly to the affected consumers if they are found to have violated the WVCCPA. Admittedly, the Attorney General is also seeking civil penalties and injunctive relief, these being the type of claims clearly within the state's *parens patriae* authority. But for the reasons stated above, I do not believe that these claims are the primary focus of this case, and are instead subsidiary claims that will be considered by the trial court only if the primary claim of reimbursement to the allegedly overcharged consumers is successful.

I believe that my analysis is strengthened by the fact that some of the same private attorneys representing the Attorney General here are simultaneously representing individuals who have filed essentially identical claims against the same defendants in Michigan and Minnesota. No one questions that those cases are class actions; in fact, they were filed as class actions. *See Graphic Comms. Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, No. 09-cv-2203 (D. Minn); *City of Lansing v. CVS Caremark Corp.*, No. 09-994 (30th Jud. Cir., Ingham County, Mich). If one were to close

one's eyes as to who the named plaintiff is in the three law-suits, there is no way to detect a material difference between the Attorney General's request for repayment to overcharged consumers under WVCCPA § 46A-7-111(1) in the present case and the same claims that are pending in Michigan and Minnesota.

CAFA's legislative history, which is admittedly limited, also supports my conclusion that this case is simply not a *parens patriae* action. During the debate in the U.S. Senate over CAFA, Senator Pryor proposed an amendment that would have exempted all class actions filed by state attorneys general from removal under CAFA. *See* 151 Cong. Rec. S1157 (daily ed. Feb. 9, 2005). Both Senators Grassley (a cosponsor of CAFA) and Hatch (the former chair of the Sen-ate Judiciary Committee) opposed the Pryor Amendment because, among other things, the Amendment risked "creating a situation where State attorneys general can be used as pawns so that crafty class action lawyers can avoid the jurisdictional provisions of [CAFA]" by "simply includ[ing] in their com-plaint a State attorney general's name as a purported class member." *Id.* at 1163-64.

The concern that Senators Grassley and Hatch expressed in opposing the ultimately defeated Pryor Amendment is exactly what has come to fruition here. I believe that the West Vir-ginia Attorney General has been "used as a pawn" so that the private class-action lawyers can remain in state court and avoid the impact of CAFA, despite the fact that the real par-ties in interest are the allegedly aggrieved West Virginia con-sumers and not the state.

Having concluded that the affected West Virginia consum-ers are the real parties in interest, I find that this action should be removable under CAFA because the essential requirements of a class action are met given the factual circumstances of this case. Although the WVCCPA does not contain all of the requirements of Rule 23 of the Federal Rules of Civil Proce-

dure, "CAFA does not require such exactitude." *West Virginia ex rel. McGraw v. Comcast Corp.*, 705 F. Supp. 2d 441, 452 (E.D. Pa. 2010). The Senate Judiciary Committee Report on CAFA states that the definition of a class action should be interpreted liberally:

> [CAFA's] application should not be confined solely to lawsuits that are labeled "class actions" by the named plaintiff or the state rulemaking authority. Generally speaking, lawsuits that resemble a purported class action should be considered class actions for the purpose of applying these provisions.

S. Rep. No. 109-14, at 35 (2005).

Here, the West Virginia Attorney General is representing a large group of West Virginia citizens who have allegedly been overcharged by the Pharmacies in their purchase of generic drugs. Yet their claims are too small on an individual basis to justify any one of them bringing suit alone. This is exactly the type of situation that class actions were designed to address. *See Montgomery Ward & Co. v. Langer*, 168 F.2d 182, 187 (8th Cir. 1948) ("The class action was an invention of equity mothered by the practical necessity of providing a procedural device so that mere numbers would not disable large groups of individuals, united in interest, from enforcing their equitable rights nor grant them immunity from their equitable wrongs." (internal citation omitted)).

Further, the WVCCPA clearly contemplates that the Attorney General can fairly and adequately protect the interests of West Virginia's generic-drug purchasers by bringing this type of lawsuit on behalf of the class. *See Comcast*, 705 F. Supp. 2d. at 453 ("The [West Virginia Antitrust Statute] assumes that the state attorney general is an adequate representative . . . . "). The majority apparently disagrees, concluding that the Attorney General's lawsuit cannot be considered a class action because the Attorney General is not an *actual* member

of the class. It principally relies on the case of *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982), to support its conclusion.

*Falcon* is a Title VII case in which Mexican-American employees filed suit against their employer for alleged discrimination in hiring and promoting. The Supreme Court held that the class representative's complaint failed to include any "specific presentation identifying the questions of law or fact that were common to the claims of respondent and of the members of the class he sought to represent." *Id.* at 158. Specifically, the evidentiary approaches to the individual and class claims were entirely different because the class representative "attempted to sustain his individual claim by proving intentional discrimination, [whereas he] tried to prove the class claims through statistical evidence of disparate impact." *Id.* at 159.

I have no problem with the majority's proposition that the class representative's claims should be typical of those of the class as a whole. But *Falcon* is distinguishable from this case. Unlike the class representative in *Falcon*, whose claims were not typical of the class, the putative class in this case is comprised of identically situated West Virginia consumers who have allegedly been overcharged for their generic drugs. I therefore believe that the majority's conclusion that the Attorney General cannot be a class representative because he has not literally been injured is too narrow a reading of class representation.

The Fifth Circuit, in fact, did not even discuss the point that the Louisiana Attorney General himself was not actually harmed. Rather, the court simply concluded that the lawsuit was "brought in a representative capacity on behalf of those who allegedly suffered harm." *See Caldwell*, 536 F.3d at 430; *see also Comcast*, 705 F. Supp. 2d at 453 (stating that the West Virginia Antitrust Act assumes that the Attorney General is an adequate representative).

The majority also relies on *General Telephone Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318 (1980), and *In re Edmond*, 934 F.2d 1304 (4th Cir. 1991), to conclude that the Attorney General's role in this case "is more analogous to the role of the EEOC or other regulator when it brings an action on behalf of a large group of employees or a segment of the public." But these cases are distinguishable. *General Telephone* involved a Title VII action filed by the EEOC in its own name pursuant to its authority under § 706 of the Civil Rights Act of 1964. The Supreme Court concluded that where the EEOC acts under § 706, "it acts also to vindicate the public interest in preventing employment discrimination," and not as a class representative. *Id.* at 326. Section 706 expressly authorizes the EEOC to bring a "civil action against any respondent . . . upon failure to secure an acceptable conciliation agreement, the purpose of the action being to terminate unlawful practices and to secure appropriate relief." *Id.* at 324. And the EEOC has exclusive jurisdiction for the 180-day period following the filing of a charge with the Commission.

In contrast, the Attorney General's power under WVCCPA § 46A-7-111(1) is at all times controlled by decisions that the consumer is free to make regarding whether to initiate his or her own lawsuit, and the relief the Attorney General seeks under that provision is solely for the benefit of the aggrieved consumer. Further, *General Telephone* involved federal questions arising under the Civil Rights Act of 1964 and therefore did not address the availability of federal jurisdiction in a diversity action.

*In re Edmond* is also distinguishable. In that case, the Fourth Circuit held that the Maryland Consumer Protection Act gave the Maryland Consumer Protection Division *parens patriae* authority to bring a nondischargeability proceeding against a debtor. The court concluded that the Consumer Protection Division was acting on behalf of the state's quasi-sovereign interest because (1) the Maryland Consumer Protection Act grants the Consumer Protection Division the

authority to "initiate administrative hearings to obtain a cease and desist order on its own initiative," and (2) the Division has the ability to require disgorgement, in the absence of individual complaints, and in some cases "over and above that which will be returned to individuals." *In re Edmond*, 934 F.2d at 1310-11 (internal quotation marks omitted).

Unlike the Maryland Consumer Protection Act, WVCCPA § 46A-7-111(1) does not "contemplate[ ] enforcement by the [Attorney General] without regard to individual consumers." *See id.* at 1310. The Maryland Consumer Protection Act provides that a "private action is 'in addition' to any action by the Division." *Id.* at 1312 (quoting Md. Code Ann. Comm. Law § 13-408). In contrast, the Attorney General's power under WVCCPA § 46A-7-111(1) is dependent on whether the consumer files his or her own suit. I believe that the fundamental differences between the Maryland Consumer Protection Act and the WVCCPA makes any reliance on *In re Edmond* misplaced.

As mentioned above, the allegedly overcharged consumer, like any putative class member considering whether to join a class action, has the ultimate say as to whether to be bound by the Attorney General's lawsuit. WVCCPA § 46A-7-111(1) provides in pertinent part that

> [i]f a consumer brings an action against a creditor to recover an excess charge or civil penalty, an action by the attorney general to recover for the same excess charge shall be stayed while the consumer's action is pending and shall be dismissed if the consumer's action is dismissed with prejudice or results in a final judgment granting or denying the consumer's claim.

The Attorney General's power over a particular generic-drug purchaser's claim is thus ultimately controlled by the consumer. I therefore believe that WVCCPA § 46A-7-111 is

sufficiently similar to Rule 23 of the Federal Rules of Civil Procedure to meet CAFA's requirements for class actions. And because this is (1) a civil action (2) in which the amount in controversy exceeds the sum or value of $5,000,000 and (3) involves a plaintiff class exceeding 100 persons whose West Virginia citizenship is different from any defendant, none of whom are considered citizens of West Virginia, I would hold that CAFA's jurisdictional requirements are met. *See* 28 U.S.C. § 1332(d).

One final issue that the majority addresses is the concept of sovereign immunity. But because West Virginia voluntarily brought this lawsuit, I see no Eleventh Amendment or sovereign immunity concerns in asserting federal jurisdiction over this case. *See In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 118-120 (2d Cir. 2007) (explaining that the "removal of the cases here was the result of the voluntary acts of California and New Hampshire in commencing the lawsuits against the defendants [and,] having done so, these states subjected themselves to all the rules and consequences attendant to that decision"); *see also California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 848 (9th Cir. 2004) (rejecting the state's argument that involuntary removal is equal to commencing a suit against the state because "where a State voluntarily becomes a party to a cause and submits its rights for judicial determination, it will be bound thereby and cannot escape the result of its own voluntary act by invoking the prohibitions of the Eleventh Amendment" (quoting *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906)).

In sum, there is a saying that if something looks like a duck, walks like a duck, and quacks like a duck, it is probably a duck. To my mind this case "quacks" much more like a CAFA class action than a *parens patriae* case. I would therefore reverse the judgment of the district court and allow this case to proceed in federal court.